Chisholm v. McGehee.

# CHISHOLM vs. McGEHEE.

[APPLICATION FOR MANDAMUS TO COMPTROLLER OF PUBLIC ACCOUNTS.]

1. *Comptroller's authority and duty to draw warrants on treasurer.*—The comptroller of public accounts has no authority to draw a warrant on the treasurer, for the payment of any claim against the State, unless expressly authorized and required by law to do so.

2. *Compensation of salt commissioner; how paid.*—The act approved December 9, 1862, providing for the appointment of a salt commissioner by the governor, and fixing his compensation, (Session Acts, 1862, p 57,) while it appropriates one hundred thousand dollars, "out of any money in the treasury not otherwise appropriated," to carry out the provisions of the act, does not require that the compensation of the commissioner shall be paid by the warrant of the comptroller on the treasurer.

3. *When mandamus lies.*—The courts will not grant a mandamus, to com-

Chisholm v. McGehee.

pel the peformance of an official act by a public officer, except where the party applying for the writ has no other adequate and specific remedy.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. GEO. GOLDTHWAITE.

THIS was an application by Albert G. McGehee, for a *mandamus* against Marion A. Chisholm, the comptroller of public accounts, requiring that officer to draw his warrant on the State treasurer, in favor of the petitioner, for the sum of four thousand one hundred and sixty-six 66-100 dollars, claimed by the petitioner to be due to him from the State, as compensation for his services as salt commissioner, under the appointment of the governor, from the 22d May, 1862, until the 20th January, 1864. The petitioner alleged his appointment by the governor, (under the authority of the act of the legislature approved on the 9th December, 1862,) the performance by him of the duties of the office during the period specified, the amount of compensation which he was entitled to receive from the State, the presentation of his account to the comptroller on the 16th February, 1867, and the refusal of the comptroller to draw a warrant in his favor on the State treasurer. The comptroller accepted service of a rule *nisi*, and filed an answer, in which he admitted the truth of all the facts stated in the petition, but averred—1st, that the petitioner's claim "was created in aid of the late war," and was therefore declared void by the ordinance of the State convention adopted on the 28th September, 1865; 2d, that the petitioner's compensation, as fixed by the governor, "was to be paid in Confederate currency, or treasury-notes, then and since much depreciated in value, and ought not to be paid in gold, or in present currency, without a proper reduction"; and, 3d, "that there is no appropriation of money by the general assembly, out of which said debt can be paid." On the hearing, on the petition and answer, the circuit court awarded a peremptory *mandamus;* and its judgment is now assigned as error.

The following is the act under which the petitioner was

appointed, and under which he claimed compensation for his services:

"*An act* to enable the people of Alabama to procure necessary supplies of salt at reasonable prices, and for other purposes.

"SECTION 1. *Be it enacted by the senate and house of representatives of the State of Alabama in general assembly convened*, That all contracts and agreements made since the adjournment of the last regular session of the general assembly of the State of Alabama, by the governor of said State, and for and on behalf of said State, for the purchase, manufacture, and transportation of salt, for the use of the people of said State, be and the same are hereby ratified and confirmed.

"SEC. 2. *Be it further enacted*, That the governor be, and he is hereby authorized, for and on behalf of said State, to continue the operations of manufacturing salt, now being carried on under his direction upon the upper salt lands of the State, in the county of Clarke; and to use such means for the development of the saline waters of the State, and the speedy and efficient production of salt therefrom, as in his judgment the wants of the people and the interests of the State may require; and to take such other measures and make such other contracts as he may deem expedient to secure a timely supply of salt for the people of Alabama.

"SEC. 3. *Be it further enacted*, That the governor of Alabama be, and he is hereby, authorized to appoint an agent, to be styled the 'Salt Commissioner of Alabama,' to superintend the operations of developing the saline waters of this State, and the manufacture of salt provided for in the preceding section of this act; and to be removable at the discretion of the governor. Said commissioner shall give bond in the sum of fifty thousand dollars, payable to the State of Alabama, and approved by the governor, conditioned for the faithful performance of his duties as such agent and commissioner; and shall be allowed for his services reasonable compensation, to be fixed by the governor, not to exceed the rate of two thousand five hundred dollars per annum; and A. G. McGehee, for the services here-

tofore rendered by him as salt commissioner, under appointment of the governor, shall be allowed the compensation provided for in the preceding part of this section.

"SEC. 4. *Be it further enacted*, That the salt manufactured or purchased under the provisions of this act shall be distributed among and sold to the inhabitants of this State, at prices not to exceed the cost of manufacture, or purchase, and sacking, with transportation and other incidental expenses added, when not sold at the place of manufacture or purchase. In the distribution thereof, due regard shall be had for the wants of counties remote from means of public transportation; and no person shall be entitled to purchase said salt, except for private use, nor in quantities greater than twenty-five pounds per head for his family, or for individuals or families *bona fide* represented by him, until all the people of the State are supplied.

" SEC. 5. *Be it further enacted*, That, in order to enable the governer to carry out the provisions of this act, the sum of one hundred thousand dollars, or so much thereof as may be necessary, be, and the same is hereby, appropriated out of any money in the treasury not otherwise appropriated.

"SEC. 6. *Be it further enacted*, That the governor may at any time lease out the said works, or any portion thereof, and any other, or any portion of the State salt works which the State may regain possession of, by the recission of any existing contract between said State and John P. Figh, as well as the salt lands belonging to said State, on such terms as the governor may deem best for the interests of the State."

JOHN W. A. SANFORD, Attorney-General, for the State.
ELMORE, KEYES & MORRISSETT, *contra*.

BYRD, J.—The rule seems to be firmly established, that where a party applying for a writ of *mandamus* has another legal and specific remedy, the court will not grant the writ. It is a high prerogative writ, and never to be resorted to, except where otherwise justice would be obstructed.—6 Bacon's Abr. 419, 431; *Mead v. Dunn*, Minor, 46; *Jones, Ex*

*parte,* 1 Ala. 15; *Mansony, Ex parte,* 1 Ala. 98; *Tarver v. Commissioners' Court,* 17 Ala. 530; *Ex parte Elston,* 25 Ala. 73; *Tennessee & Coosa Railroad Co. v. Moore,* 36 Ala. 372.

In the application of the above rule, the adjudications are not uniform and harmonious. We propose to adhere to what we conceive the current of the decisions of this court, which, in the main, have been sound, and consistent with well settled principles. We shall confine this opinion to the case before us, which involves the general power of the courts to require the comptroller to issue a warrant to persons claiming a debt or salary from the State.

Is the case made by the record one in which the appellee has the right to require the appellant to issue a warrant on the treasurer? Among the duties imposed by section 365 of the Code upon the comptroller, is one " to draw warrants on the treasurer, for the payment of all moneys directed by law to be paid out of the treasury, in favor of the person authorized to receive the same; stating in such warrant on what account the same is due, and, in cases of special appropriation, referring to the law under which it is drawn." Section 37 of the 4th article of the constitution provides, that "no money shall be drawn from the treasury, but in pursuance of an appropriation made by law." By section 3170 of the Code, the treasurer is required " to pay all warrants drawn, under authority of law, by the comptroller on the treasurer, and to pay no money out of the treasury, except on the warrant of the comptroller."

Under the 3d section of an act approved December 9th, 1862, (Pamphlet Acts, 57,) the governor was authorized to appoint a " salt commissioner," who should " be allowed for his services reasonable compensation, to be fixed by the governor, not to exceed the rate of two thousand five hundred dollars per annum"; and it further provides, that "A. G. McGehee, for the services heretofore rendered by him as salt commissioner, under appointment of the governor, shall be allowed the compensation provided for in the preceding part of this section." The 5th section of the act appropriates one hundred thousand dollars, "out of any money in the treasury not otherwise appropriated," to carry out the provisions of the act. This is an appropriation

Chisholm v. McGehee.

out of a specific fund, if any was then in the treasury not
otherwise appropriated ; and it would seem from the lan-
guage of the act, to be under the control of the governor,
and not of the comptroller.

The above acts are the only ones which make any pro-,
vision for the compensation of the salt commissioner, and
any appropriation which can be construed into an author-
ity to any officer of the State government, to pay the ap-
pellee for his services as salt commissioner.   All the gen-
eral appropriation laws authorize the comptroller to draw
his warrant on the treasurer, for the several amounts ap-
propriated.   This is in strict conformity to the constitution,
and to the provisions of section 365 of the Code.   The
comptroller, unless expressly authorized by law, has no
power, or right, to draw a warrant on the treasurer for the
payment of any claim.   The act approved December 9th,
1862, referred to, does not authorize the comptroller to draw
any warrant on the treasurer, for the payment of the com-
pensation, prior or future, of the appellee as salt commis-
sioner.   The act, at most, only authorized the comptroller
to draw a warrant in favor of the governor, for the amount
appropriated, to be paid "out of any money in the treasury
not otherwise appropriated."   The act imposes no duty on
the comptroller ; and if he was authorized to issue a war-
rant in favor of the governor, it was not by any provision
of that act.

None of the cases above cited from the decisions of this
court are in conflict with these views, but all are in har-
mony therewith.   In the case of *The Tennessee & Coosa R.
R. v. Moore, (supra,)* the governor was required by law to
draw a warrant on the treasurer ; and this court held, that
this duty could be enforced by *mandamus*.   But, upon the
following authorities, it is to my mind questionable, whether
this court has the right or power to enforce by *mandamus*
any duty imposed upon the governor of the State by law.
*Hawkins v. The Governor*, 1 Pike, 570 ; *Law v. Towns*,
8 Georgia, 360 ; *People v. Bissell*, 19 Ill. 259 ; *State v. Gov-
ernor*, 1 Dutch. 331 ; *Houston R. R. Co. v. Randolph*, 24 Tex.
317 ; *Dennett, petitioner*, 32 Maine, 508 ; *Mauran v. Smith*,

American Law Register, for 1866, p. 630, (August No,); and authorities cited in the above cases.

Sections 365 and 370 of the Code, construed together, clearly show in what cases the comptroller is authorized by law to draw a warrant on the treasurer; and neither the Code, nor any subsequent statute, having authorized the comptroller to draw a warrant in favor of the appellee, the former properly refused to do so.—*Ex parte Lynch*, 2 Hill, (N. Y.) 45; *Lynch v. The Mayor*, 25 Wendell, 680; *Tully, Ex parte*, 4 Pike, 220.

If the appellee is entitled to recover any thing from the State, he is not left without an adequate and specific remedy, but is authorized by law to sue in the courts of the State; and when he obtains a judgment, the law provides a mode of payment; and therefore the extraordinary procedure by *mandamus* is not allowable.—Code, §§ 2133, 2140, and authorities above cited.

The true rule on this question may be thus expressed : This court will not require any officer to do an act, which is not specifically and especially authorized by law, at the instance of another, in a proceeding by writ of *mandamus;* and that the comptroller is not authorized to issue a warrant on the treasurer, unless so required by law to do. It results, that the judgment of the circuit court must be reversed, and the proceedings in that court be dismissed, at the costs of the appellee. Let a judgment be entered accordingly.

WALKER, C. J., not sitting.