[State *ex rel.* Brickman v. Wilson.]

# State *ex rel.* Brickman *v.* Wilson.

## *Application for Mandamus.*

| 123 | 259 |
| 126 | 439 |
| 126 | 443 |
| 126 | 444 |
| 126 | 448 |

1. *Legislature; clerk of the house under no duty to erase or ex-
   punge extraneous and false entries in the Journal after it
   has been filed in the office of the Secretary of State.*—After
   the Clerk of the House of Representatives has entered and re-
   corded in the Journal of the House the proceedings and tran-
   sactions had in the House of Representatives at any particu-
   lar session of the General Assembly, and such Journal has
   been signed by the Speaker and attested by the Clerk and filed
   in the office of the Secretary of State as required by law, all
   the duties of the Clerk with respect to such Journal, except
   the duty of copying it for the printer, ceases, and the Clerk
   has no further custody or control over the Journal, has no
   right or authority to alter such Journal, or by interpolation
   to make a correction therein, nor is he under any duty to
   erase or expunge an extraneous or false entry from the
   Journal.

2. *Mandamus; when interest of relator sufficient to invoke issuance
   of writ.*—One who has received and paid for a liquor license
   and is about to be subjected to an additional license tax under
   a statute alleged to have been passed in an illegal manner,
   has sufficient interest in having the integrity of the Journal
   of the House of Representatives conserved, to entitle him to
   file a petition for *mandamus* to require the officer, upon whom
   such duty rests, to erase and expunge from the Journal ex-
   traneous and false entries made therein for the purpose of
   correcting the alleged illegality and to show that such statute,
   exacting the additional license tax, was regularly and legally
   passed.

3. *Same; when relator entitled to writ.*—To authorize the issuance
   of a writ of *mandamus*, there must concur a specific legal
   right and the absence of any other specific and adequate legal
   remedy; and such other remedy, the existence of which will
   prevent the invocation of jurisdiction by *mandamus*, must be
   not only equally convenient, beneficial and effective as *man-
   damus*, but it must be a remedy which does enforce in some
   way the performance of the particular duty sought, and not
   merely a remedy, which, in the end, saves the party to whom
   the duty is owed unharmed by its non-performance.

[State *ex rel.* Brickman v. Wilson.]

3. *Same; issued to compel performance of existing duty.—Manda-mus* is a conservative remedy enforcing existing duties, but does not create or impose new duties, and by it an officer may be coerced to an act which it was his duty to perform, without the writ, but not to an act as to which he was under no duty to perform before its issuance; and if the duty sought to be performed is claimed to have been imposed by statute, the imposition of it must be clear by the terms of the statute itself, or must result therefrom by fair and reasonable implication.

4. *Secretary of State; under no duty to expunge false entries from Journal of House of Representatives; mandamus.*—The statute providing that the Secretary of State shall keep "the records and papers belonging to the General Assembly, keeping the papers of each house separately," imposes no duty upon the Secretary of State to erase or expunge extraneous or false entries made upon the Journal of the House of Representatives after it has been signed by the Speaker and attested by the Clerk and filed in the office of the Secretary of State as required by law; and, therefore, he can not be compelled thereto by writ of *mandamus.*

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

The petition in this case, which was filed by the appellant, is set out *in extenso* in the opinion.

The respondent, R. P. McDavid, demurred to the petition, and to the writ issued thereon to him, and also moved to quash said writ upon the following grounds:

"1st. That the relator, I. Brickman, fails in said writ and in the petition upon which the same was issued to show any right in him to sue out said writ, or require the performances of the acts by the respondent, which, by said petition and writ, this court is prayed to to command respondent to perform.

"2d. That said writ and petition fail to show any clear, specific legal right in said Brickman to ask this court to command respondent to expunge from the Journal of the House of Representatives of the State, the matter alleged in said petition and writ to have been inserted in or on said Journal without authority of law by some person or persons unknown to relator.

"3d. The said petition and writ wholly fail to show any duty of this respondent imposed on him by law to

erase or expunge, or permit the said Massey Wilson,
Clerk of the House of Representatives, to expunge, from
said Journal of said House, the matters specifically set
forth in said petition and writ.

"4th. That said writ and petition wholly fail to
show or aver that this respondent has declined to per-
mit the said Massey Wilson, as Clerk of the House of
Representatives, to expunge or erase from said Journal
the matter set forth in said writ and petition.

"5th. That said writ and petition wholly fail to
show or aver upon which of respondents the specific
duty of erasing the matter set forth in said writ or
petition from the said Journal of the House of Repre-
sentatives, or that said duty rests upon either of respon-
dents or on them both acting jointly.

"6th. That said writ and petition show on its face
that if the matter set forth in the same, as having been,
subsequent to the signing of the official Journal of the
House by its Speaker and Clerk, and subsequent to the
adjournment of the General Assembly *sine die,* and af-
ter said official Journal had been deposited in the office
of the Secretary of State, by some person unknown,
written on the margin of the Journal, could not, as a
matter of law, affect the question of the validity of said
act in any way or be of injury to the relator in any
shape or form.

"7th. That admitting the truth of every averment
in said writ and petition set forth, yet the said matter
alleged to have been added to said Journal, without
authority of law, could not add any validity to said
law, and could not impose any loss or danger of loss
on petitioner in any shape or form.

"8th. That said writ and petition shows on its face
that relator has a complete and adequate remedy at
law for any of the wrongs or injuries he complains of in
said petition or writ, if any wrong has been done or
threatened to be done him by the alleged additions of
the matter set forth in said writ and petition.

"9th. That said writ and petition show on their
faces that if said matter added as charged on said
Journal, was so added and changed that the relator
could not be convicted of any criminal offense by the

[State *ex rel.* Brickman v. Wilson.]

reason of such an addition or be in any manner affected thereby.

"10th. That said writ avers that the act mentioned therein is void for the violation of certain constitutional requirements and that if so void, the relator can be in no danger of any criminal prosecution, or in any danger or likely to suffer any loss or damage by reason of the alleged addition to said Journal of the matter alleged to have been so added subsequent to the session of the General Assembly.

"11th. That said writ and petition show on their faces that the alleged duty of expunging or erasing from said Journal of the House of Representatives the matter so added, if it is a duty imposed by law on him, is one involving the judicial power of this respondent of ascertaining the truth of the matters alleged and adjudging his duty in the premises, and this court can not command this respondent how he shall perform any judicial power or duty enjoined on him by law.

"12th. Because said writ and petition ask that this respondent be required to do a vain and useless thing.

"13th. Because said writ prays, in the alternative, that respondent should expunge or erase, or that he should permit Massey Wilson, as Clerk of the House of Representatives, to expunge or erase the said matter alleged to have been illegally added to the Journal of the said House of Representatives, and henceforth fails to clearly state the precise thing that is required of respondent that he should do.

"14th. That the conclusion stated in said writ and petition that relator could not, if prosecuted for violating said act of the Legislature, show that the said addition to said Journal of the House of Representatives was unlawfully made is stated as a mere conclusion of the pleader, and is not a correct conclusion of law.

"15th. That said petition and writ fail to show that the said Massey Wilson, Clerk of the House of Representatives, ever applied to this respondent for permission to erase or expunge from the said Journal the matter alleged to have been illegally added thereto.

"16th. The said petition shows on its face that this court has no power or jurisdiction to interfere with or

direct how the Journal of the House of Representatives of this State shall be made up or prepared, and has no authority or jurisdiction to order the erasure or expunging therefrom of any of the matter alleged to have been added to said Journal in said petition and writ.

"17th.   That said writ fails to aver that the report of the Committee of Conference on the Bill entitled 'An Act to amend the Revenue Laws of the State of Alabama,' was not in fact adopted by a majority of the members of the House of Representatives of the State taken by a vote by 'yeas' and 'nays,' and that such report and the vote thereon are not now a part of the Journal of the House of Representatives, but merely avers that the said Journal 'as signed by its Speaker and Clerk,' showed that such report was not so adopted by such vote, and there is no provision of law requiring such Journal to be so signed.

"18th.   That the Journal of the House of Representatives is made up from the proceedings of said House, which Journal is not published until after the adjournment of the House; that section 2221 of the Code requires that the Clerk of the House must select, at the close of each session, all papers belonging to the House of Representatives, except such as relate to unfinished business, and deposit them in the office of the Secretary of State; that by section 2240 of said Code, he is required to file and arrange said papers in the office of said Secretary of State; that by law, the said Journal is composed of the proceedings of said House of Representatives, is not required to be signed by the Speaker of the House or its clerk, and, from anything that appears in said writ, the report of the Conference Committee mentioned therein, and the vote on the same, appeared from said papers, and it became the duty of said clerk, in filing and arranging said papers and copying said Journal, to include therein the said report, and the vote thereon, as the same is, in law, a part of said Journal.

"19th.   That if, in fact, the report of said Committee of Conference, and the vote thereon, as stated in said writ, was made and had, and if the same appears among the papers of said House of Representatives deposited in the office of the Secretary of State, which is

not denied in ·said writ, then said report and the vote on the same, is a part of the Journal of the House, as being a part of its proceedings, and it became the duty of the Clerk of the House, at the time of preparing said Journal for publication, to insert the same therein.

"20th.   That the manner of keeping, preparation and publication of its Journal is a matter solely within the discretion and control of the House of Representatives, and, from aught that appears in the writ in this cause, the respondent compiled and arranged the same in strict accord with the instructions and directions of said General Assembly.

"21st.   That the allegations that the alleged addition and alteration was made by persons unknown to relator, is not equivalent to an allegation that such person was not authorized to make the same, and the statement that such alteration was illegal and unauthorized, is a mere conclusion of the pleader."

The respondent Massey Wilson demurred to the petition and to the alternative writ issued to him, and also moved to quash said writ, assigning several grounds for the demurrer and motion.   Many of these grounds were the same as those interposed by the respondent McDavid.   The grounds of the demurrer and the motion interposed by the respondent Wilson, which differed from the grounds of the demurrer and motion interposed by the respondent McDavid, were as follows:

"2d.   That said petition and writ fail to show any specific legal duty on this respondent to expunge or erase from said Journal the matter alleged in said petition and writ to have been added thereto.

"3d.   That said petition and writ show on their faces that the petitioner has an adequate legal remedy for any wrong which may have been done him by the making of said alleged additions, or alterations, of said Journal of the House of Representatives.

"4th.   Because said writ prays in the alternative that either this respondent, or his co-respondent, Robert P. McDavid, as Secretary of State of the State of Alabama, should erase or expunge the matter alleged to have been added to said Journal, and hence fails to state the precise thing that is required to be done or who is to do it.

"5th. That, taking the averments of the writ and petit.on to be true, the additions alleged to have been made to said Journal in no way affects the validity of the act mentioned in said petition and writ, not could such addition, if so made, create any liability on relator or give any legality to said act.

"6th. That said petition shows on its face that if said act is void by reason of any failure of the legislature to observe any constitutional requirements in its passage, then the said additions so made could not give any validity to said act, and the fact that they were so made could be shown in any prosecution brought against the relator; and, hence, his remedy at law is complete and adequate."

"8th. That the acts of persons unknown, which is to be construed as persons having nothing to do with the preparation and preservation of said Journal, can not affect or concern the validity of any act of the legislature, and marginal statements, additions and alterations written by such persons are, if they were so written, absolute nullities, and the expunging or erasing of such matter would be vain, idle and useless."

The court sustained separate demurrers of each of the respondents; and thereupon, by leave of the court, the petition was amended by striking out from it all averments and prayer looking to relief against Massey Wilson. The demurrer of R. P. McDavid was, thereupon, re-interposed to the petition as thus amended. The court sustained the demurrer of R. P. McDavid to the amended petition; and the relator declining to further amend his petition, judgment was rendered quashing the alternative writ and dismissing the petition. From this judgment the relator appeals.

LOMAX, CRUM & WEIL, THOS. G. & CHAS. P JONES and H. PILLANS, for appellant.—Under the constitution, the House of Representatives is required to keep a Journal of its proceedings, and to record therein certain matters specifically set forth in that instrument.—Constitution, Art. IV, §§ 13, 21 and 22. It is common knowledge that the House performs this legislative duty through its creature, its Clerk, (in this case the respondent, Wil-

[State *ex rel.* Brickman v. Wilson.]

son). Under the statutes, it was the duty of Wilson, as Clerk and the servant of the House, to keep, and file with the Secretary of State, a correct Journal; and it was the duty of McDavid, as Secretary of State, and the designated custodian of the public records of the State, and the records of the General Assembly, to preserve these records, and therefore, of necessity, to preserve the Journal in its integrity after it was filed.—Code of 1896, §§ 2224, 2240; Code of 1896, § 1974.

So long as but one clear, specific thing is asked to be done, where two or more parties are joined, the rule *nisi* may be issued to several, and the court can issue its peremptory writ to the one on whom the duty rests.—High Extra. Legal Rem. § 440, citing, 20 Wisconsin, 79; *Grider v. Telly,* 77 Ala. 422.

We take it that the remedy by *mandamus* against a public ministerial officer is plain where an omission or breach of duty has occurred and there is no other remedy given by law.—Shortt Ext. Rem. 225, note 354; High Ext. Rem. 118, 119; *Stevenson v. Mansong,* 4 Ala. 317; *Ex parte Lowe,* 20 Ala. 330. It is the favorite writ of the courts for the control of such officers in the exercise of their ministerial functions and duties and will lie at the suit of any citizen interested in any case where the public functionary has neglected or violated his duty, and the citizen is without other remedy. *Woolf v. McCaul,* 76 Va. 882; 13 Encyc. Plead & Prac. 633, *et seq;* High Ext. Legal Rem. § 431; *Wample v. State,* 38 La. An. 829. By the statute (Code, §§ 2221-2223) the journal of the House is required to be filed with other archives in the office of the Secretary of State to be by him safely kept. Code, § 1974. The reason for this is not far to seek in view of the numerous provisions of the constitution regarding the journal and its contents, the decisions of the Supreme Court touching its importance and conclusiveness and the judicial cognizance that the courts take of its contents. It is true that a period is given within which to gather this and the other archives of the General Assembly together and place them in the hands of the Secretary of State; but once placed in his hands they become the immutable evidence of the ac-

tion and doings of the legislature, and are not as so lodged to be contradicted by any parol evidence or otherwise collaterally impeached.—*U. S. v. Ballin,* 144 U. S. 4; 23 Encyc. Law, 193, n. 1. There are two uncontrovertible reasons why the relator, as a citizen and tax-payer, has the right to ask the relief sought in the petition for mandamus. The first is that he avers in the petition, and the demurrers admit, that he is a liquor dealer and, as such, must either pay the license tax which he avers is illegal, or else he must, if he so refuse to pay, subject himself to pay a fine, or be imprisoned in default thereof, unless this alteration be expunged from the Journal, and this, by reason of the fact, that this Court takes judicial notice of the recitals of the Journal, and could not know what had been surreptitiously added thereto, and thereon bases his direct and personal interest in having said matter expunged. Second. It is insisted, that, if it has been shown that there is any duty on these respondents or either of them, to expunge the extraneous matter from the Journal, then that duty is plainly a public duty. The keeping— that is, the preservation of the records—is a statutory duty. The violation of this statutory duty is a violation of a public duty by a ministerial officer. "The books are full on the point that on a failure to perform a ministerial duty by a ministerial officer—a public duty—the courts will grant a *mandamus,* whether the petitioner has an interest merely as a citizen or an interest peculiar to himself;" and he need not aver, or prove, any special interest.—High Extra. Leg. Rem., 431.

The theory under which it is claimed that the relator has an adequate remedy at law, by submitting to prosecution, or by paying under protest and bringing suit, is that the court judicially knows what the true Journal of the House is, and, hence, the false entry deceives no one, and is absolutely without force or effect. This is absolutely untenable except upon the hypothesis that the court *intuitively knows what is true,* or that it can go beyond the Journals of the General Assembly, and aid its judicial knowledge by a resort to proof extrinsic of the legislative records as to what is the Journal.

This latter.proposition has never been decided in Alabama, but it has been held that the Journal imports absolute verity, and that the court takes judicial knowledge of it, and the practice has been, ever since *Jones v. Hutchinson*, for the court to physically inspect the Journal deposited in the office of the Secretary of State to inform its judicial knowledge.—*Jones v. Hutchinson,* 43 Ala. 721; *Moody v. State,* 48 Ala. 115; *State ex rel. v. Buckley,* 54 Ala. 613; *Henderson v. State,* 94 Ala. 96.

It is the absolute duty of the custodian of a public record to keep it free from. legal, as well as physical mutilation; and this legal duty will be enforced, if it is one clearly implied by the law, though no express statute enjoins it in so many words. The Secretary of State is not the mere naked bailee of the Journal. He is its custodian to the fullest measure of the term. But he is more. The law makes him a *witness* as to what the Journal contains. He is required to certify what it contains, and his certificate "must be received in evidence in all courts."—Code, §§ 1816, 1819. He can not certify anything except the record *deposited with him.* It is his duty to see that the records deposited with him are not altered or mutilated, and it is his duty to certify the *truth,* concerning the *true record only.* This duty to cert'fy the truth, carries with it, the correlative duty to reject the false. It carries with it the duty to sift and separate the true record from the false record. If a false alteration has been placed upon a part of the true record, in such a manner that it can not be erased or destroyed without mutilation or destroying the true record, it is his duty in some way to distinguish the alteration from the real record, either by drawing lines around it, or running a pen through it, with a memorandum as to the fact.

There rests upon the Secretary of State a duty of high character to preserve these records and archives absolutely from alteration or interpolation or change by any peson whatever, and his failure so to do is a breach of perhaps his highest public duty; any such interpolation should be by him as soon as discovered removed as was done in the case of the Revenue Act passed upon in *Moog v. Randolph,* and it would seem to be unneces-

sary to have to apply to the courts to compel this officer
to perform this plain duty. We have seen that on
principle *mandamus* is the appropriate remedy.
Lord Mansfield has said "a *mandamus* is a pre-
rogative writ to the aid of which the subject is
entitled * * * . It was introduced *to pre-
vent disorder from a failure of justice and de-
fect of police.* Therefore it ought to be used
upon all occasions where the law has established no
specific remedy, and *where in justice and good govern-
ment* there ought to be one * * * . * . If there
be right and no other specific remedy, this should be
applied."—*Rex v. Barker,* 3 Burr 1267; *Atty. Gen.
v. Boston,* 123 Mass. 471. The courts have not hes-
itated to apply this writ in similar cases. An interest-
ing and conspicuous case where the court held this to
be the appropriate remedy to purge the record of all
extraneous illegal matter though apparently regular is
the Virginia case of *Wise v. Bigger,* 79 Va. 279; where
the court held that it was plain that mandamus would
lie, even to constrain the keeper of the rolls (who is the
equivalent of our Secretary of State as to these matters)
to omit and expunge from his records that which though
in form duly passed by the legislature and duly deliv-
ered to him yet was not a statute law of the common-
wealth duly and constitutionally enacted.—See also
*Wolf v. McCaul,* 76 Va. 882; *State v. Mason,* 9 So. Rep.
776.

That the duty of the Secretary of State to faith-
fully keep his records unchanged, is ministerial, seems
too plain for argument. We complain of nothing save
his failure to keep his records intact and to erase ex-
traneous matters placed upon them wrongfully and
without authority, while they lay in his custody. He
has admitted by his demurrer, that this transgression
occurred; how can he then say that he has a judicial dis-
cretion to exercise as to whether he will allow these
things to stand? It was his duty to keep the record
precisely the same as when it came to his hands and
turn it over intact to his successor. This is a prime
object in the creation of his high office. Even judicial
officers may be mandamused as to matters of plain min-

isterial duty and it has never been deemed a sufficient answer to an alternative *mandamus* requiring the performance of a duty, for the respondent to say that it devolved upon him to pass judgment as to whether he ought to do it or not.—*Grider v. Tally*, 77 Ala. 425; *Tenn. & Coosa R. R. Co. v. Moore*, 36 Ala. 371.

GORDON MACDONALD and LEE H. WEIL, *contra.*— *Mandamus* is an extraordinary legal remedy and is only granted in extraordinary cases, where, without its use, injustice and oppression would result, and there is no other existing remedy to the party invoking it; all usual and ordinary modes of proceeding and forms of remedy being powerless to afford redress to the party aggrieved. High's Extraordinary Legal Remedies, § 5.

The Journal of the House of Representatives is the record of its proceedings, kept by the Clerk of the House of Representatives, and, after the session of the term for which it is kept, is turned over by him to the Secretary of State to be kept in his office. If, after it is so turned over by him and deposited by the Secretary of State in his office some unknown person, illegally and without authority, adds to the Journal some matter which does not belong with it, and is no part of it, as is alleged to be the fact in the case at bar, can it be questioned that evidence could be introduced to show that this additional matter was not part of the Journal and that this evidence could be offered at any time that it became important to any litigant to do so.

We cannot in fact conceive of any record which has been illegally falsified as to which evidence of such falsification would not be admissible where the record was material. If in the case at bar evidence of what is and what is not the Journal of the House of Representatives is admissible, as is contended by relator, why would it not be equally admissible on the trial of relator if he were prosecuted for a violation of the law? Such a time would be the only proper time at which the question might arise.—*Clough v. Curtis*, 134 U. S. 372.

In order to invoke the remedy of *mandamus*, it must further affirmatively appear that respondent has failed

and refused and still fails and refuses to perform a plain, certain and unambiguous duty due from him to the public, and the failure to perform which will be of peculiar and special damage to the relator, or in the performance of which the relator has some special interest.—High's Extraordinary Legal Remedies, § 33. The duty must be one which is incumbent upon respondent and the failure to perform which is a dereliction of his duty regardless of a writ of *mandamus.* "A court cannot order an officer to do an act which, without the order of the court, would not be his legal duty enjoined upon him by law as pertaining to his office or position."—Merrill on Mandamus, § 60. Nor will the relief be granted against a public officer to procure the performance of an act which is not imposed upon him as a duty by law.—High's Extraordinary Legal Remedies, § 10; *State v. Vanwinkle,* 43 N. J. L. 579. Does the alternate writ in the case at bar show any legal duty on either of the respondents to perform that which it is sought to force them to do. The duties of the Secretary of State of Alabama and the Clerk of the House of Representatives are clearly defined by the Code.—§§ 1974, 2221, 2240.

The contention of relator is that if at any time any person illegally adds anything thereto it is his duty to return to Montgomery, no matter where he may at that time be residing, and erase such extraneous matter and that a failure to do so would be dereliction in his duty. The Code certainly does not contemplate such to be his duty, for it provides for his payment as soon as he has made up the Journal, delivered a copy to the public printer properly indexed and delivered the Journal and other House papers to the Secretary of State, and if such were in fact the duty of the Clerk he would never have completed its performance, for if at any time anything were to be added to the Journal as prepared and delivered by him, it would be his duty to expunge it. Nor is it any clearer that it is the duty of the Secretary of State to expunge from the records that which has been placed there without his knowledge or consent, illegally and by an unauthorized person. Yet in order for this writ to lie, it must be his duty, and a failure to

[State *ex rel.* Brickman v. Wilson.]

perform it, whether demand was made upon him or not and regardless of the writ of *mandamus*, must be a dereliction of that duty.—Merrill on Mandamus, § 60; High's Extraordinary Legal Remedies, §§ 7, 32, 33a.

In order therefore for this writ to be granted it must appear that it is the duty of both respondents beyond a doubt to perform the act which is sought to be coerced, —for if it is the duty of one and not of the other the writ must fail. A petition for *mandamus* against two officers jointly, which cannot be sustained as to one, necessarily fails as to both.—*People v. Yates,* 40 Ill. 126; High's Extraordinary Legal Remedies, § 440; 14 Amer. & Eng. Encyc. of Law, (1st edition), 220.

It is encumbent upon a person seeking the extraordinary aid of a *mandamus* to show, not only that he has no other specific remedy, but that he has a specific right.—High's Extraordinary Legal Remedies, § 450, citations; *State v. Everett,* 52 Mo. 89; 14 Amer. & Eng. Encyc. of Law, (1st edition), 218. "The jurisdiction will not be exercised for the purpose of determining mere fanciful questions in which the relators have no pecuniary or personal interest."—High's Extraordinary Legal Remedies, § 10. "Nor will it be granted for the purpose of determining mere abstract questions from whose determination no practical results can follow.—High's Extraordinary Legal Remedies, §§ 33, 33a.

If a private individual makes himself relator he must show some particular right or privilege of his own independently of that which he holds with the public at large as a citizen.—1 L. R. A. 738 note; *Territory v. Cole,* 3 Dakota 301; *State v. Hollingshead,* 1 Cent. Rep. 192; 47 N. J. L. 437. In such case he must show a clear right.—1 L. R. A. note.

This court in a *mandamus* proceeding has no jurisdiction or authority to interfere with or direct how the Journal of the House of Representatives shall be made up or prepared, and has no power or authority to order the erasure or expunging therefrom of any matter alleged to have been added to said Journal.—*Clough v. Curtis,* 134 U. S. 372; 14 Amer. & Eng. Encyc. of Law,

[State *ex rel.* Brickman v. Wilson.]

(1st edition), 216; High's Ex. L. Rem. §§ 450, 538, 539; *State v. Milwaukee,* 22 Wis. 397.

We would again respectfully call the attention of the court to the fact that if the relator is not entitled to relief against either of the respondents for any reason he is not entitled to relief against the other, but the writ must fail as to both.—*People v. Yates,* 40 Ill. 126; High's Extraordinary Legal Remedies, § 440; 14 Amer. & Eng. Encyc. of Law, (1st edition), 220.

McCLELLAN, C. J.—This is a petition by the State on the relation of Brickman for *mandamus* to issue to Massey Wilson, as Clerk of the House of Representatives, and to R. P. McDavid, as Secretary of State. The petition is as follows:

"Your petitioner, I. Brickman, a resident citizen of the county of Montgomery, and State of Alabama, relates and shows unto your Honor:

"That on the first day of January, 1899, relator, who is over the age of twenty-one years, was a tax-payer and voter in the county and State aforesaid, and is now such citizen, tax-payer and voter; that on, to-wit: said first day of January, 1899, your relator was engaged in, and is now engaged in, the business of a retail dealer in spirituous, vinous or malt liquors in the city and county of Montgomery and State of Alabama, and that on, to-wit, said first day of January, 1899, your relator paid for and took out a license as such retail dealer in spirituous, vinous or malt liquors for the year 1899, in all respects in strict compliance with law; that on, to-wit, the 15th day of April, 1899, an additional license tax of twenty-five dollars was demanded of relator for the carrying on of his said business as a retail liquor dealer, said demand being made under and by virtue of an alleged act of the General Assembly of Alabama, entitled, 'An Act to amend the Revenue Laws of the State of Alabama,' approved on the 23rd day of February, 1899. That relator refused, and still refuses, to pay said additional license tax so demanded, and has thereby rendered himself liable to a criminal prosecution, and to pay a fine on account of his said refusal to pay said additional license tax so demanded, if said act is a valid and legal enactment.

18

[State *ex rel.* Brickman v. Wilson.]

"That relator is informed and advised by counsel, and upon such information believes and charges that said act entitled 'An Act to amend the Revenue Laws of the State of Alabama,' approved February 23rd, 1899, is wholly unconstitutional and void, in that, after the passage of the bill, entitled as aforesaid, by the House of Representatives, the same was amended by the Senate in several particulars, which said amendments were not concurred in by the House by a vote of a majority of its members, taken by yeas and nays, and the names of those voting for and against recorded upon the journal of the House, nor was the report of the Committee of Conference, appointed upon the disagreement of the two Houses—which said report recommended the adoption of said amendments—adopted by a vote of a majority of its members, taken by yeas and nays, and recorded upon the journal of the House, as required by Article IV, section 22, of the Constitution of the State of Alabama. And that the Journal of the House, as kept by the House, signed by its Speaker and Clerk, and deposited in the office of the Secretary of State, shows that said bill failed to become a valid law for this want of conformity to the Constitution in its passage.

"Relator has been informed and advised, and he be-' lieves such information to be true, and upon such information and belief, charges that subsequent to the signing of the official journal of the House by its Speaker and Clerk, and subsequent to the adjournment of the General Assembly *sine. die,* and after said official journal had been deposited in the office of the Secretary of State, that some person, unknown to relator, and without any authority of law, and illegally and wrongfully, wrote upon the margin of volume second, on page 839, of said official Journal of the House, the following words and figures, to-wit: 'Report of Committee of Conference: Mr. Speaker: The undersigned Committee of Conference to consider the difference of the two Houses on H. B. 935, beg leave to report as follows: After considering the matter, they recommend, 1st. The adoption of all the Senate amendments; 2nd. The adoption of the following additional amendments: Sec.    Be

it further enacted, that the dispensaries in each municipality shall pay fifty per cent of such State and County license as were paid by all the saloons in such municipality during the year 1898, payable quarterly, and in no case, less than amount paid by one saloon. By striking out the words, "or long distance telephones" where they occur in the third and fourth line thereof; by inserting in line 19, after the word "each" and before the word "Company," the word "telegraph;" by inserting in line 16 of said section, after the word "lines," the following: "and each long distance telephone company, whose lines within the State do not exceed one hundred miles, shall pay at the rate of fifty cents per mile, and each long distance Telephone company, whose lines within the State exceed one hundred miles, shall pay two hundred and fifty dollars."

Respectfully submitted,

D. J. MEADOR,
G. B. DEANS,
W. D. JELKS,
on part of the Senate.
J. J. MITCHELL,
W. W. BRANDON,
O. KYLE,
on part of the House.

The House concurred in the Conference Report. Yeas, 52, Nays 0—Yeas, Messrs. Speaker, Andress, Arrington, Bayles, Box, Brandon, Brown, Bruner, Burkhalter, Byars, Cameron, Capps, Cheatham, Cofer, Collier, Cornelius, Dameron, Davidson, Davis, Flewellen, Forrester, Fuller, Garrett, George, Gibson, Greene, Harris, Haynie, Hood, Huey, Hurt, Kelly, Killen, Kyle, Lavretta, Long, Lyle, Matthews, Mitchell, McQueen, Patterson, Poole, Reynolds, Rogers, Sloan, Spears, Stodghill, Tate, Thigpen, Vaughn, Wallace, White. (52.)'

"Relator is further informed, and upon such information believes, and therefore charges, that said attempted alteration of the journal is of no legal effect, and utterly void, but that the fact that it was so placed upon the journal, after the House had adjourned *sine die*, and the Speaker had signed said journal, and the same had been deposited in the office of the Secretary

of State, does not appear from anything shown by said
journal; that the alteration thus appearing, the journal,
on its face, is made to speak an untruth, and, if permit-
ted to stand, cuts off the right of relator, in the event
he is prosecuted for doing business without a license,
from showing that said alleged act never became a law
in the mode provided by the Constitution, and that it
is, therefore, null and void and of no effect. Relator
further shows that if said wrongful and illegal altera-
tion of said journal is allowed to stand, relator will be
forced either to pay said illegal license or to pay a fine
for his refusal to make such payment, or be imprisoned
in default thereof; and relator is, therefore, directly
and personally interested in the expunging of said al-
teration from the pages of said journal, so that it may
in fact speak the absolute verity which the law imports
to it.

"Relator further shows that the said Massey Wilson,
as Clerk of the House of Representatives, is the person
who is charged by law with the preparation of said
journal, and with the duty of keeping it accurately
and truthfully, and that the said Robert P. McDavid,
as Secretary of State, is the person charged by law
with the custody and preservation of said journal, as
it was delivered to him at the adjournment of the Gen-
eral Assembly, and that the duty rests upon the said
Wilson, as such Clerk, to strike out and expunge from
said journal the said illegal and wrongful alteration
made thereto, and that the duty rests upon the said Mc-
David, as Secretary of State, and as custodian of said
journal, to permit the said Wilson to strike out and
expunge said illegal alteration of said journal.

"That on the 15th day of May, 1899, relator de-
manded of the said Wilson, as such Clerk, to expunge
said illegal and wrongful alteration from said journal;
and also demanded of said McDavid, as such Secretary
of State, to permit said Wilson to expunge said altera-
tion from said journal, or to expunge the same himself;
and both the said Wilson and the said McDavid, re-
spectively, refused, upon said demand, to comply there-
with.

"Wherefore, inasmuch as your petitioner is entirely without remedy in the premises, unless it be afforded by the interposition of this honorable court with its writ of *mandamus,* he prays your Honor to direct and order that an alternative writ of *mandamus* issue to the said Massey Wilson, as Clerk of said House of Representatives, of State, commanding him forthwith, to strike out, erase and expunge from the journal of said House of Representatives, the said illegal and wrongful addition and alteration, which is hereinbefore set out. And also that an alternative writ of *mandamus* issue to the said Robert P. McDavid, as Secretary of State for the State of Alabama, commanding him to permit the said Wilson, as such Clerk, to strike out, erase and expunge from said journal, said illegal and wrongful addition and alteration thereof, hereinbefore specifically set out. Or, if the said Wilson is without authority to strike out, erase and expunge the said illegal and wrongful alteration, then that the said McDavid, as the custodian of the said journal, be commanded forthwith to strike out, erase and expunge from the journal of said House of Representatives, the said illegal and wrongful addition and alteration; or else that the said Wilson and said McDavid show cause, on a day to be fixed by your Honor, why they should not do so. And he further prays your Honor that all such other orders may be had in the premises as justice requires."

Alternative writs having issued in accordance with the prayer of the petition to said McDavid and Wilson, respectively, McDavid appeared and demurred to the petition and to the writ issued to him, and also moved to quash the writ on various grounds, and Wilson appeared and demurred to the petition and to the alternative writ issued to him, and moved to quash said writ on various grounds. Some of the assignments of objections to the writs in the demurrers and motions of both McDavid and Wilson went specially to the sufficiency of the case made against Wilson and against Wilson and McDavid conjunctively and to the propriety of the joinder of Wilson as a party. The demurrers of both respondents were sustained generally by the court, and thereupon by leave of the court, the

petition was amended by striking therefrom all averments and prayer looking to relief against Wilson. The demurrer of McDavid was re-interposed after this amendment of the petition, and was again sustained by the court. And the relator declining to further amend his petition, judgment was rendered quashing the alternative writ, and dismissing the petition. From that judgment this appeal is prosecuted; and it is here assigned for error (1) that the court sustained the demurrer of Wilson to the petition and alternative writ, (2) that the court sustained the demurrer of McDavid to the petition and alternative writ, (3) that the court sustained the demurrer of McDavid to the amended petition and alternative writ, and (4) that the court quashed the alternative writ.

We do not understand counsel for appellant to seriously, or at all, insist that Wilson, the Clerk of the House of Representatives, is under any duty to erase and expunge the extraneous and false entry from the journal. Certainly there is no ground to base such a contention upon. It cannot be doubted, we think, and is indeed quite obvious that the clerk's official connection with the original journal—all his duties in respect of it except the duty of copying it for the printer—ceases upon his delivering it to the Secretary of State for safe keeping after it has been signed by the Speaker and himself. From and after that time he has no custody of it, no control over it, no right to its possession, except for the specific purpose above referred to, no power to alter it nor to prevent others altering it and is under no duty to keep it safely or to preserve it from mutilation or interpolation. And we deem it unnecessary to say more than this in justification of the city court's ruling in respect of the relator's right to coerce Wilson to expunge and erase from the journal the alleged interpolated matter.

Whether, assuming that the Secretary of State was under the duty sought to be enforced in this proceeding, and the relator had such interest as would entitle him to demand the performance of that duty, the petition is defective for joining as respondents both the Clerk and the Secretary, is a question upon which there is

conflict of authority, and which need not be decided. If this petition was originally bad on this account, it would seem that under the liberal spirit of amendment which pervades our statutes and decisions the defect was eliminated by the amendment which was made.

That the relator has such interest in having the integrity of the journal conserved in the manner prayed as authorizes him to exhibit this petition, and will entitle him to the relief he seeks if the duty of expurgation is upon the Secretary of State, we do not doubt. His attitude bears a striking similitude to that of relators who seek to coerce by *mandamus* the issuance to them of licenses to carry on certain occupations and businesses; and it is well settled in this court and generally that where the duty of issuing such licenses is ministerial, *mandamus* is the appropriate, indeed the only, remedy for its enforcement. This relator's interest in the premises is to carry on a business for which a license has all along been required upon the license which the law requires and which has been issued to him without being subjected to additional license taxation in consequence of the failure of the Secretary of State to perform an alleged ministerial duty: He asks that that officer be ordered to perform that duty to the end that he may carry on the business in which he is now engaged; and his interest and right is the same as if the duty upon that officer was to issue him a license, instead of being in effect to authorize him to continue to carry on the business without taking out or paying for an additional license.

Nor—again assuming the Secretary of State is under the alleged duty—has the relator any other remedy than by the writ of *mandamus* to enforce the performance of the duty. The "other remedy," the existence of which will oust—or rather prevent the invocation of— jurisdiction by *mandamus,* must be equally convenient, beneficial and effective as *mandamus.—Raish v. Board of Education,* 81 Cal. 542; *Overseers v. Overseers,* 82 Pa. St. 275. It must be a remedy which will place the relator *in statu quo,* that is, in the same position he would have been had the duty been performed.—*Ethridge v. Hall,* 7 Port. 47. Indeed, it must be more than

this: it must be a remedy which itself enforces in some way the performance of the particular duty, and not merely a remedy which in the end saves the party to whom the duty is owed unharmed by its non-performance.—*Sessions & Leary v. Boykin,* 78 Ala. 328; 2 Spelling Extra. Relief, § 1375; Merrill Mandamus, § 53. Hence it is that while *mandamus* will not lie to enforce a duty which may be coerced by the ordinary civil actions at law—as where the duty is merely to pay money, or to deliver property—it does lie whenever such actions cannot be availed of to the specific performance of the official act which the relator is entitled to have performed—as where a disbursing officer refuses to draw a warrant it is his duty to draw, in which case an action for damages, while it would eventually save the relator harmless, would not coerce the discharge of the specific duty. And so it is here: This relator might defend against an indictment for carrying on his business without paying the additional license tax intended to be imposed by this alleged statute, or, paying it upon compulsion, he might recover back the amount so paid, upon showing the falsification of the journal and, of consequence, the invalidity of the supposed enactment; but neither of these remedies would be as convenient, beneficial and effective as a proceeding by *mandamus,* neither would put him *in statu quo,* as that expression is employed in our decisions, and neither would compel the expurgation of the journal by the Secretary of State. It is plain, we think, that those assignments of demurrer which proceed upon the theory that the petition discloses another adequate remedy for the relator are not well taken.

There remains for consideration but one question. It is abstractly the most important in the case. It is also the most difficult. It is whether the Secretary of State was under a duty to erase and expunge the alleged unauthorized entries from the house journal. That he was under such duty must be made to clearly appear before the writ of *mandamus* will lie against him in respect of it. If the duty exists, it is purely statutory: the Secretary of State has no duties to perform except those imposed upon him by the constitu-

tion and statutes of the State. *Mandamus* is a conservative, not a creative remedy: it enforces existing duties, but does not impose new duties. By it the officer may be coerced to an act which it was his duty to perform without it, but to no act as to which he was under no duty before its issuance. And the duty must be clear upon the statute. The rule as to the duty and the right to its performance is variously and not always accurately expressed in the adjudged cases. The right must be "certain and positive."—*Beaman v. Board,* etc. 42 Miss. 237. The duty must be "clear, and if there be doubt involving the necessity for litigation," the writ will not lie.—*Townes v. Nichols,* 73 Me. 515. There must be "a specific legal right and a positive duty." *State ex rel. v. Burnside,* 33 S. C. 276. "Duty must be specifically enjoined by law."—*Ferlon v. Carriage Co.* 42 Ohio St. 30. Right " must be clearly established. If right doubtful, writ will be refused."—*M. & O. R. R. Co. v. State,* 132 Ill. 559. "Writ will not issue where there is a substantial doubt of respondent's duty." *State ex rel. v. Buhler,* 90 Mo. 560. "Will not be awarded when there is a doubt of the relator's right to the relief sought."—*State ex rel. v. Wallace,* 46 Ill. 415. "Duty must be clearly enjoined by law."—*Draper v. Noteweare,* 7 Colo. 276. "It must be clearly commanded by law."—*Pickett v. White,* 22 Tex. 559. "When the legal right is doubtful, writ will be denied." *State ex rel. v. Appleby,* 25 S. C. 100. Issued when there is a failure to perform "plain official duty," (*Maddox v. Neal,* 45 Kan. 121), not "when well founded doubt as to the alleged duty arises."—*State ex rel. v. Johnson,* 100 Ill. 537; *People v. Hatch,* 33 Ill. 9. "Where the validity of a judgment of conviction is doubtful, writ will not issue to enforce it."—*Rex v. Broderif,* 5 B. & C. 239; *Regina v. Ray,* 44 Up. Can. Q. B. 17. The act sought to be compelled, must be "clearly defined and enjoined by law."—*Glasscock v. Com'r,* 3 Tex. 51. "The writ does not lie to compel a county judge to perform an act which the law does not specifically enjoin upon him, as a duty resulting from his office."—*State ex rel. v. Napier,* 7 Iowa, 425. The duty must be either imposed upon the officer "by some express enactment or necessarily result from the office he

holds."—*Pond v. Parrot*, 42 Conn. 13.   Officer must be "expressly authorized by law" to do the act.—*Chisholm v. McGehee*, 41 Ala. 192.   "A clear specific legal right" to have the act performed must be shown.—3 Brick. Dig. p. 625.

As we have said, some of the foregoing expressions are inaccurate or misleading.   A doubt that may arise in the mind of the court in matter of law as to the existence of the duty will not, as some of the cases seem to hold, require or justify the denial of the writ:   It is the court's province and duty to solve all such doubts and declare the duty as it finds it to be after its misgivings as to the intent and meaning of the statute involved or as to any other question of law have been eliminated.   Substantial doubt as to whether the facts of the particular case present the conditions upon which the officer is bound to act, may, it would seem, justify or require a refusal of the writ.   Of course the doubts of the officer as to his duty are of no consequence.—*State v. Tarpen*, (Ohio) 1 N. E. 209.   Again, the duty need not be "specifically enjoined" or "expressly prescribed" by law.   The true rule in this connection, we apprehend, is that the duty must be imposed in terms by the statute, in cases like the one in hand, or must result therefrom by fair and reasonable construction or interpretation: it must appear from the statute in terms or by fair implication.—*Mobile & Ohio Railroad Co. v. Wisdom*, 5 Heisk. (Tenn.) 125; *Browne v. Duane*, 14 N. Y. S. 450; *State v. Balche*, 89 Mo. 188; *Pond v. Parrot*, 42 Conn. 13.

And the question recurs: Is the act which relator seeks through this proceeding to have performed by the Secretary of State imposed as an official duty upon him, expressly or by implication by statute?   The only statutes bearing upon the matter are embodied in sections 2240 and 1974 of the Code as follows: "§ 2240. *Secretary of senate and clerk of house to file papers and furnish copy of journal.*—Within forty days after the adjournment of any session of the general assembly, the secretary of the senate and the clerk of the house of representatives must file and arrange the papers of their respective houses in the office of the secretary of

state and copy and deliver to the public printer the
journals of their respective houses, with proper in-
dexes thereto, and for such services, when performed,
they shall receive, respectively, the sum of four hundred
dollars." "§ 1974. *Duties of Secretary of State.*—It
is the duty of the secretary of state—1. To keep the
State seal, the original statutes and public records of
the State, the records and papers belonging to the gen-
eral assembly, keeping the papers of each house separ-
ate." The duty alleged in the petition arises, if at all,
under the section last quoted. The duty by it imposed
is "to keep the records and papers of the general assem-
bly." Obviously the duty in question is not specifical-
ly enjoined, nor expressly imposed by the terms em-
ployed in the enactment, and counsel for appellant do
not insist that it is. If said duty exists at all it must
be implied from an interpretation of the phrase "to keep
the records." The legislature has not said that it shall
be the duty of the Secretary of State to erase unauthor-
ized matter interpolated into these records, but it has
said only that he shall keep the records. Is the duty
to erase a fair and just implication from the duty to
keep? When the legislature constituted the Secretary
of State the custodian of a record made by the house
of representatives, did it thereby require him to know
at all times what that record contained in its original
integrity so that he would know at any given time
whether it had been falsified by the interpolation of
spurious and unauthorized entries upon it? When the
legislature laid upon him the command to preserve the
records of the general assembly, did it intend also to
command him to expurgate from those records, or from
the paper upon which they are written, any matter or
entry he might at any time find thereon which accord-
ing to his belief based upon what he should regard as
the best information obtainable was not a part of the
true record but had been placed upon it without author-
ity of law? Did the law-makers intend that the Secre-
tary of State upon receiving an intimation that the re-
cital in the house journal that the speaker of the house
in the presence of the house signed a bill providing a
general revenue system for the State, was not in the

journal as it was signed by the speaker and clerk and delivered to him for safe keeping, should institute an inquiry on the point, and, upon being assured by A. B. that this entry had been interpolated, and by C. D. that it was so written originally, should see fit to believe the statement of A. B. in preference to the statement of C. D., and should thereupon expunge the recital and thereby destroy the important statute to which it related when it might well be in point of fact that the statement of C. D. was true and the vital matter erased was part of the true record? Is any such intention to be gotten by implication from the language of the statute? We think not. Let the phrase "to keep" be given its broadest meaning, let it involve the duty to preserve, the duty to prevent spoliation, the duty to prevent interlineation, the duty to prevent entries of any and every kind upon the record as it comes to the Secretary of State, the duty to bring back the record when it is wrongfully taken from his office, the duty to replace leaves that have been torn from it if he can recover them, the duty to blot out ink that may be splotched upon the writing so as to render it illegible, let the duty to keep be extended by implication to all these things, and yet it falls short of imposing upon the Secretary of State the duty of conferring on him the right to strike from this record any writing purporting to be part of it that may at any time appear upon it. For if he has the right and it is his duty to erase any one entry upon assurance more or less certain of its falsity he has the same right and is under a like duty to expunge any other entry or any part of what appears to be the record upon like assurance of its falsity. He is not required by law nor is he supposed in fact to know what the journal of the house contains or does not contain, or should contain or should not contain. He in fact cannot know. If he is to determine upon any means of assurance that an entry is improperly upon the journal, and it is his duty upon such determination to erase such entry, it must also be upon him to determine upon any other means of assurance that is satisfactory to him that an entry has been interpolated and he is also under a duty to erase such entry. If by the

evidence of his own senses he may determine that an entry appearing on the record is an unauthorized interpolation, and is thereupon in duty bound to erase it, he may in like manner determine upon the evidence of the senses of another conveyed to him by statements he feels justified in relying on that a part of the journal is an unauthorized interpolation, and thereupon it would be his duty to expunge it. And so there may be conflicting assurances as to whether a given entry is false and, foreign or true and original; and, if he is under any duty of expurgation in the premises, he must assume to find the truth between such contradictory statements as best he may, and erase the entry in question if he is led to believe that it does not belong in the record. And he may be entirely mistaken and misled in each of the instances supposed. His own senses may deceive him. The senses of another may deceive that other, or that other may intentionally or otherwise misrepresent the fact to him. And where there are the conflicting statements of two, he may rely upon the false statement and discredit the true one. And what would be the result? A solemn and true record would be destroyed beyond recovery or substitution, and the most important, formal and constitutional exercise of power by one of the great departments of government, resulting in statutes of the highest moment to the commonwealth, involving, it may be, the life, liberty and property of the citizen, would go for naught. This would not be "to keep the records of the general assembly," but to destroy them. And all this by the purely ministerial officer, who is charged with their preservation, acting *ex parte,* or rather upon his own motion, without power to examine witnesses, or even to receive affidavits, while the courts, whose business it must be to determine upon proper presentation, what does constitute the records of the general assembly, are not invoked and may be powerless to seasonably interfere to preserve those records from spoliation. It is no answer to say that in the case at bar the court is to determine whether there is an interpolation in the house journal and in what it consisted, and order its expurgation if it is found to be unauthorized. The court in this pro-

ceeding can only do that after determining that it was the Secretary of State's duty in the absence of all action by any court to have so determined and thereupon proceeded to erase the alleged foreign matter; and the court cannot so adjudge in this instance without affirming for all time the power and duty of that officer to pass upon what these records contain and to expunge all that he finds in them which he thinks does not belong there. Nor is it any answer to the views we entertain, nor to their application in the case at its present stage to say that this is an appeal from a judgment on demurrer to the petition and alternative writ, that the demurrer admits the facts alleged in the petition, and that we must assume the verity of those allegations. This is mere sticking in the bark. The question presented is not whether the averments of the petition are true but whether conceding their truth, the Secretary of State was under a duty to expunge these entries. We say he was not, because such duty would be so fraught with and productive of evil in the way of the spoilation and mutilation of the very record which the legislature has charged the Secretary of State to safely keep and preserve, or, at the very best, so subject it to imminent risks of destruction, as that the law-makers could not have intended to have imposed it—could not, while expressly providing for preservation, have intended to afford opportunity and occasion for destruction—and an implication will not be allowed which is not only not in line with the expressed intent but offers a means of defeating that intent. A duty which puts it in the power of a ministerial officer without adversary proceedings, without notice to anybody, without record of his acts and without his proceedings being subject to review, to change, amend and destroy public records of the most vital importance to the State and to its citizens cannot be implied from the imposition upon him of the duty to safely keep and preserve those records: a power to thus destroy, even with the honest intent to preserve, cannot be implied from a duty to keep, guard and protect. And this is our conclusion, that from the statute which requires the Secretary of State to keep the house journal after it has been delivered into his

custody by the clerk of the house, there is no implication of a duty or right in him to erase and expunge any entry that he may at any time find in that journal or upon the margin of the paper upon which it is written down, and that officer has no such right nor is he under any such duty.

We have been at some pains in the examination of authorities with reference to this case. We believe there are none directly upon the point last discussed, or upon any really analogous question. There are *dicta* on a somewhat similar question in the case of *Wise v. Bigger*, 79 Va. 269, opposed to the view we have adopted, and in the case of *Clough v. Curtis*, 134 U. S. 361, in line with the doctrine we have declared. The well considered case of *Legg v. Mayor & Aldermen of Annapolis*, 42 Md. 203, is interesting and instructive on the subject of the authentication, etc., etc., of statutes, as is the elaborately considered case of *People v. Hatch*, 33 Ill. 9,. on the general subject of *mandamus* to public officers; but neither the *dicta* in the cases first named, nor the decisions in the latter two, nor any other adjudged case has been of any direct assistance in the consideration of the main point in this case.

The record presents no error, and the judgment of the city court must be affirmed.

Affirmed.