# Ex parte DuBose.

### Application for Mandamus.

1. *Revised Code, section 3490; to what amendment of, does not apply.*—The amendment of section 3490 of the Revised Code, authorizing a supersedeas of judgments rendered for recovery or possession of real estate, has no applications to judgments which had been executed before its passage.

5. *Same; practice to be pursued under.*—The appeal bond which is to operate as a *supersedeas* under this statute, must be given in time to stay the execution of the judgment; if defendant, by any fault of his, allows the judgment to be executed, his right to supersede is lost.

3. *Same.*—It would be a good practice, under this act, for the court, at the time judgment is rendered for the recovery or possession of lands, to enter upon the minutes the amount and condition of the appeal bond which is to operate a *supersedeas* of judgment.

4. *Mandamus; when will not issue.*—Although a party may have a clear legal right to the issuance of the writ of *mandamus*, there are cases in which it will be denied; as where it will in a collateral manner decide questions of importance between persons not parties to the proceeding, who have had no notice or opportunity to interpose their defenses, and the enforcement of the writ will entail great hardship and difficulties upon them.

This was an application for *mandamus* to compel the judge of the circuit court of Marengo to fix the amount of a bond to operate a *supersedeas* of a judgment for recovery of lands, &c.

The facts are fully set forth in the opinion.

MORGAN, LAPSLEY & NELSON, for petitioner.

MANNING, J.—At the fall term, 1874, of the circuit court of Marengo county, the heirs of E. K. Carlisle, deceased, obtained a judgment, upon the verdict of a jury, against petitioner and others in an action in the nature of ejectment for the recovery of certain lands in that county. By a writ of execution thereon, defendants had been put out of the possession of the land in December, 1874, and plaintiffs put into possession. All the costs in the cause had been paid by some of petitioner's co-defendants, and as to the $5,000 damages awarded against him and one of his co-defendants, the return of the sheriff upon the execution was, "no property found."

In March, 1875, an act was passed by the Legislature "to amend section 3490 of the Revised Code," (Acts, p. 256,) by which it was enacted: "Where the judgment at law is rendered for the recovery or possession of real property . .

. . the party wishing to supersede the execution of such judgment . . . must . . . apply . . . to the judge of the court wherein such judgment, from which an appeal is desired, was rendered, in term time or vacation, within the time allowed by law for such appeal, who must direct the amount and condition of the appeal bond."

Under this act, after its passage, petitioner, K. C. DuBose, applied to the judge of the circuit court in vacation, and afterwards by motion to the court in term time, November 26, 1875, to fix the amount of the bond to be given by him in pursuance of this statute, which application and motion were, after argument, refused. And this court is now, by petition, applied to for a *mandamus* to said circuit judge requiring him to fix the amount of such appeal bond.

It is well settled that the writ of *mandamus* will not be issued except where there is a clear and specific legal right to be enforced or upheld, and no other specific legal and adequate remedy by which it can be done. These are conditions without which the power will not be exercised at all. In this the courts are unanimous, and numerous decisions of this court affirm it.—See 2 Brickell's Dig., title " *Mandamus.*" Hence, the first inquiry we must here make is, has the petitioner the clear legal right he claims?

The judgment against him and others, from which he desires an appeal, was rendered at the fall term of the circuit court, in the year 1874. Execution of the judgment was regularly conducted. The judgment was thus satisfied, so far as possession of the land was concerned. The plaintiffs were legally put in possession by officers of the law, of property which a competent court had adjudged to belong to them; and its judgment not having been reversed, it cannot appear that there was a clear legal title to the land in the petitioner.

This, however, is not, by itself, an answer to the petition. The true question is—did he have a clear legal right to a *supersedeas* of the execution after the execution of the judgment was finished? The answer may be founded on two different considerations.

In the first place, when petitioner was ejected by the sheriff, no law provided for a suspension or *supersedeas* of the writ by which plaintiffs were to be put in possession. The act under which the right is now claimed, was passed several months afterwards; and statutes are not, generally, to be construed so as to give them a retro-active operation. Even if it be within the constitutional competency of the legislature, —after a plaintiff has, in an action regularly begun and conducted, established his right to land occupied adversely by

the defendant, and, by the judgment therein of a court of competent jurisdiction, and execution thereof, which is the end and fruit of the action and judgment, has obtained possession of the land,—to require this lawful action of the court through its officers, to be undone, upon conditions prescribed by the legislative body, we cannot hold that this statute was intended to have that effect. It does not reach cases in which execution was perfected before its adoption.

In the second place, although the statute provides that a party "wishing to supersede the execution of a judgment" must give the bond provided for therein "within the time allowed by law for an appeal," it must be given, also, in order to have that effect, in time to stay the execution of the judgment. To hold otherwise would be to allow to the bond not a merely suspensive or preventive force, producing delay until a superior tribunal should declare its decision, but would make the bond, without any judgment or order of a court, aggressively operative to overturn and reverse what had been lawfully done in execution of a judgment which must be held to be valid and right until duly pronounced otherwise. Such a decision would produce many evil consequences, some of which will be presently adverted to as apparent in the case now before us.

We hold, therefore, that it is only before execution finished, while he is still in possession of the land, and with the purpose of keeping matters in *statu quo* until his appeal can be decided, that the defendant, in an action in the nature of an ejectment suit, against whom a judgment has been rendered, can have a *supersedeas* under this act, of the execution of the judgment.

But it is insisted on behalf of the petitioner, that he is in possession. How is he so? The sheriff, in obedience to the precept from the court, ejected him and put in the plaintiffs as owners of the premises. Plaintiffs then leased the whole property to Askew & Brother for a rent of $1,800 a year, and they sub-let a small part to petitioner, who occupies the same as sub-tenant under them. Now, it is very familiar law that the possession of a tenant is the possession of his landlord. By becoming tenant he acknowledges the right of his lessors, and through them of the plaintiffs, and his occupation is in fact their possession. To hold otherwise would lead to consequences of the most mischievous character, in which others would be also involved.

This itself is a consideration sufficient to prevent the granting of a writ of *mandamus;* for "it certainly is a sound legal principle, that cases may arise where the court will not grant a *mandamus* when the granting thereof will, in a collateral

manner, decide questions of importance between parties who are not parties to the proceedings, and have had no notice or opportunity to interpose their defense. . . . . Although it were certain that the party applying had a legal right, and that it has been violated, and that the law would afford him a remedy, and which remedy is conceded to be a *mandamus*," yet the court would not interfere in a case that "would be attended with manifest difficulties and great hardships . . involving in a collateral manner the right of parties who have no opportunity of defending their interests."—*People v. Forquer*, Breese, 68.

These views are applicable to the case here made. Plaintiffs, having recovered the land by the judgment of a competent court, and being put in possession of it, leased the premises to Askew & Brother, and they sub-let a part of it to petitioner. Important rights, obligations and liabilities have been thereby created which are in course of being observed and performed. These might be disrupted suddenly, by force of an appeal bond, executed a year, or it may be, nearly two years after these transactions were entered into, and consequent great damage, confusion and distress be produced by a grant of the writ prayed for,—when, after all, the appellate court, if the original cause be brought before it, might perhaps in a short time afterwards, establish the right in favor of the plaintiffs by an affirmance of the judgment. The writ might cause the same injustice if granted, as the withholding of it might produce in the case of an application for it by petitioner before the judgment had been executed.

The views which lead us to these conclusions tend strongly to show, also, that the statute in question ought not to be so interpreted as to produce such results. The granting of the writ could not have the effect the plaintiff desires, of restoring him, upon his executing the appeal bond contemplated in the act, to the possession of the premises in controversy, and therefore, also, he is not entitled to a *mandamus*.

"It is a fundamental principle," says High, in his work on Extraordinary Remedies, "that the writ will never be granted in cases where, if issued, it would prove unavailing; and whenever it is apparent to the court that the object sought is impossible of attainment . . . . so that the granting of the writ will necessarily be fruitless, the court will refuse to interfere."

Such refusal does not prevent petitioner from taking his appeal. This he can do, without any bond except the ordinary one for costs from the judgment of the court below, and have the action of that court reviewed in this. He is

only prevented from raising controversies that may turn out to be useless, concerning the rights and relations of the parties to the suit, and their lessees, during the interval between the execution of the judgment in the court below and the judgment of this court on the appeal.

It would be a good practice in the circuit courts, under the statute in question, to prescribe the amount and condition of the appeal bond to be given to stay execution, on the minutes of the court at the term when the judgment for the recovery of real estate is rendered; and though no humane sheriff would expedite execution of the judgment at an unseasonable time of the year, for the purpose of preventing the bond from being given, the court might, upon motion, further order a stay of execution a specified reasonable time in which to allow the bond to be executed.

As the statute is a new and important one relating to matters of practice, we have given to it a more particular consideration than was at first intended.

The writ of *mandamus* is refused, and petition dismissed.