(99 South'. 92)

STEWART, Clerk of House of Representatives, v. WILSON PRINTING CO.
(3 Div.. 652.)

(Supreme Court of Alabama.   Jan. 24, 1924.)

1. States ⬤═37—Journals of Legislature subject to correction.

Each house of the Legislature has the power to correct its journals so as to make them speak the truth at any time before final adjournment.

2. States ⬤═38—Time for delivery of journals of Houses to public printer stated; "immediately."

Code 1907, § 928, as amended by Acts 1919, p. 458, only requires journals of the Senate and the House of Representatives to be delivered to the public printer after final adjournment, and in this connection the word "immediately" means "quickly;" "without unnecessary delay."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Immediately.]

3. States ⬤═37 — Copy of legislative journal in office of secretary of state governs.

While legislative journals are printed and published for the convenience and information of the public; yet, where there is a discrepancy, the record in the office of the secretary of state must govern, under Code 1907, § 928, as amended by Acts 1919, p. 458.

4. States ⬤═107—New public printer held entitled to print journals of legislative session adjourning prior to inception of contract.

Where, in the exercise of diligence, printer's copy for legislative journals could only be made ready for delivery to public printer after expiration of session of Legislature at a time when contract of new public printer had gone into effect, such new public printer was entitled to print the journal of the entire session, under Code 1907, § 928, in view of section 1669, as amended by Acts 1919, p. 183.

5. Statutes ⬤═219—Executive construction considered only in doubtful cases.

The rule that the construction of a statute by those charged with its execution, particularly high executive officials, is entitled to great consideration, applies only in case of statutes of doubtful meaning and where such construction has for many years controlled the conduct of the public business.

6. Mandamus ⬤═73(1)—Public printer held entitled to writ as against clerk of House.

Where, after expiration of term of Legislature, copy of legislative journals was prepared and ready for public printer only after contract of new public printer was in effect, the clerk of the House of Representatives could be compelled by mandamus to surrender the copy to the new public printer, the rights of all parties being definitely fixed by the contract, though the clerk had delivered the copy to the old printer, there being no exercise of discretion in the premises since the act required of the clerk was only ministerial.

7. Mandamus ⬤═10—Relator must have clear legal right.

One seeking issue of writ of mandamus must have a clear legal right, but a doubt that may arise in the mind of the court on a matter of law will not require or justify a denial of the writ.

8. Mandamus ⬤═15, 73(1)—Will not issue when works injustice; injustice held not to exist in particular case.

Mandamus will not issue when it will work injustice or operate harshly, but it is no defense in mandamus against clerk of House of Representatives to compel delivery of copy of journal to public printer that he has delivered the copy to the old public printer on the advice of the Board of Administration and it would be hard for him to make another copy; the State Board of Administration having no duty or authority in the premises.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Petition of the Wilson Printing Company for writ of mandamus to J. H. Stewart, as clerk of the House of Representatives of Alabama.   From a judgment awarding the writ, respondent appeals.   Affirmed.

Rushton, Crenshaw & Rushton and James J. Mayfield, all of Montgomery, for appellant.

It is contemplated that the public printer for the year beginning October 1st prior to the session of the Legislature shall print the acts and journals for that session.   Const. 1901, §§ 48, 69;   Code 1907, §§ 1648, 1649, 1663, 1671, 1674;   Acts 1919, pp. 183, 1117; Acts 1923, pp. 72, 159.   Delivery of copy of the journal to the printer is to be made at any time not later than 30 days after adjournment.   Code 1907, §§ 928, 1671;   Jennings v. Russell, 92 Ala. 603, 9 South. 421; Levert v. Read, 54 Ala. 529;   Young v. The Orpheus, 119 Mass. 179;   Davie v. Miller, 130 U. S. 284, 9 Sup. Ct. 560, 32 L. Ed. 932; Cary-Lombard Co. v. Fullenwider, 150 Ill. 629, 37 N. E. 899;   Merchants' Bank v. N. Y., 97 N. Y. 355.   The construction of a statute by those charged with its execution is entitled to great consideration.   Union Ins. Co. v. Hoge, 21 How. 35, 16 L. Ed. 61;   U. S. v. Johnston, 124 U. S. 236, 8 Sup. Ct. 446, 31 L. Ed. 389;   U. S. v. Finnell, 185 U. S. 236, 22 Sup. Ct. 633, 46 L. Ed. 890;   Allen v. U. S., 26 App. D. C. 8, affd. 203 U. S. 476, 27 Sup. Ct. 141, 51 L. Ed. 281;   U. S. v. Cerecedo, 209 U. S. 337, 28 Sup. Ct. 532, 52 L. Ed. 821; U. S. v. Stump (C. C. A.) 292 Fed. 354.   Mandamus does not lie to control discretion. Marbury v. Madison, 1 Cranch., 137, 2 L. Ed. 60;   Kendall v. U. S., 12 Pet. 610, 9 L. Ed. 1181;   Decatur v. Paulding, 14 Pet. 497, 599, 10 L. Ed. 559, 609;   U. S. v. Seaman, 17 How. 225, 15 L. Ed. 226;   Ex parte Thompson, 52 Ala. 100;   Ex parte Harris, 52 Ala. 87, 23

Am. Rep. 559; U. S. v. Windom, 137 U. S. 636, 11 Sup. Ct. 197, 34 L. Ed. 811; U. S. v. Lynch, 137 U. S. 286, 11 Sup. Ct. 114, 34 L. Ed. 700; 3 Rose's Notes, 571; Secretary v. McGarrahan, 9 Wall. 298, 19 L. Ed. 579; Brown v. Turner, 70 N. C. 105; 26 Cyc. 161; 18 R. C. L. 125. Nor will it lie to enforce a right in substantial dispute. 26 Cyc. 153; Myers v. State, 81 Fla. 32, 87 South. 80; Cawthon v. State, 62 Fla. 133, 56 South. 404; Spelling on Inj. § 1386. Nor where rights of third parties will be injuriously affected. Ex parte Du Bose, 54 Ala. 278; Taylor v. Kolb, 100 Ala. 606, 13 South. 779; High, Ex. Rem. 13; 26 Cyc. 149; Merrill on Mandamus, § 83; Spelling, § 1372; State v. Jennings, 183 Ind. 172, 108 N. E. 513. Nor where the public interest will be injuriously affected. Effingham v. Hamilton, 68 Miss. 523, 10 South. 39; Kolster v. Am. Gas Co., 106 Kan. 84, 186 Pac. 738; State v. Marzton, 6 Kan. 524; 26 Cyc. 143; Evans v. Thomas, 32 Kan. 469, 4 Pac. 833; In re Waverly, 35 App. Div. 38, 54 N. Y. Supp. 368; Spelling, § 1372; Godwin v. Carolina Tel. Co., 136 N. C. 258, 48 S. E. 636, 67 L. R. A. 251, 103 Am. St. Rep. 941, 1 Ann. Cas. 349; People v. Supervisiors, 22 How. Prac. (N. Y.) 275. And a clear legal right must be shown. Ex parte Huckabee, 171 Ala. 427; Leigh v. State, 69 Ala. 261; High, 12.

Hill, Hill, Whiting & Thomas, of Montgomery, for appellee.

Copy of the journal could not be legally delivered until after adjournment of the session. Code 1907, § 928; Acts 1919, p. 458; Const. 1901, § 65; Montgomery B. B. Wks. v. Gaston, 126 Ala. 425, 28 South. 497, 51 L. R. A. 396, 85 Am. St. Rep. 42; State ex rel. Brickman v. Wilson, 123 Ala. 259, 26 South. 482, 45 L. R. A. 772; State ex rel. McKinley v. Martin, 160 Ala. 181, 48 South. 846; State ex rel. Crenshaw v. Joseph, 175 Ala. 579, 57 South. 942, Ann. Cas. 1914D, 248; State v. Draper, 43 Mo. 220; First Nat. Bank v. Dimmick, 177 Ala. 571, 58 South. 658. Neither the Brown Printing Company nor the state is denied its day in court. Roach v. State ex rel., 148 Ala. 419, 39 South. 685. The duty sought to be enforced is ministerial. Code 1907, § 928; Grider v. Tally, 77 Ala. 425, 54 Am. Rep. 65; State ex rel. Turner v. Bradley, 134 Ala. 551, 33 South. 339; Ex parte State, 89 Ala. 177, 8 South. 74.

SAYRE, J. On the facts disclosed by appellee's petition and appellant's response, the trial court issued its writ of mandamus commanding appellant, as clerk of the House of Representatives, to deliver to petitioner a copy of the journal of the House for the session of 1923; the object and purpose of the writ being to enable petitioner, in the matter of printing and binding the journal, to have the advantage of its contract with the State Board of Convict Supervisors for the public printing and binding for the year beginning October 1, 1923, and ending September 30, 1924. Respondent has appealed.

The Legislature elected at the general election in November, 1922, met, pursuant to the Constitution, on January 9, 1923, and remained in session until February 10, 1923, at which time it adjourned until July 10, 1923. On July 10th the Legislature reconvened and remained in session until September 28, 1923, when, its term under the Constitution (section 48) having expired, it adjourned sine die. Petitioner's contract was agreed upon by and between petitioner and the Board of Convict Supervisors, the Board acting therein in discharge of duty imposed upon it by law, on September 29, 1923, and was approved by the Governor, auditor, and treasurer on October 3d, next. Respondent, on February 28, 1923, had delivered to the Brown Printing Company, which had the contract for the public printing for the year October 1, 1922, to September 30, 1923, a copy of that part of the journal which showed the proceedings of the houses from January 9th to February 10th, inclusive, and the same had been put into type and printed —but not bound or delivered to the secretary of state—and on October 2, 1923, respondent, acting on the advice of the Board of Convict Supervisors, delivered to the Brown Printing Company a copy of that part of the journal of the House which showed its proceedings from July 10th to September 28th, inclusive, and respondent alleged that he had no other or further copy for delivery to petitioner. On October 27, 1923, respondent filed in the office of the secretary of state a copy of the journal. This proceeding was commenced October 31, 1923.

Section 55 of the Constitution requires that—

"Each house shall keep a journal of its proceedings and cause the same to be published immediately after its adjournment. * * * "

The journal thus prescribed is a record of the proceedings of the House day by day, and under the Constitution of this state is of great importance, for the validity of every legislative enactment depends upon an affirmative appearance upon the journal of one or more of the necessary steps in legislation, as witness sections 62, 64, 66, and 125 of the Constitution.

Referring to the fact that, by the Constitution, the sitting of each Legislature is limited to 50 working days, that it had a contract with the State Board of Control and Economy (which became the Board of Convict Supervisors February 10, 1923 [Acts 1923, p. 67]), for the public printing in all other respects like unto the contract with petitioner, but covering the year October 1, 1922, to September 30, 1923, that in respect of the laws requiring the public printing to be done under contract, the acts and journals of the Legislature are classified together (Code, §§

1647, 1648), and, so in respect of specifications of type, paper, binding, etc. (Code, § 1669, amended Acts 1919, p. 183), that provision is made for the printing of the general acts in pamphlet form immediately after their approval (Acts 1915, p. 159), and that the printer must, within 40 days after being furnished with copies of the acts, print, "and * * * within forty days after receiving the last act" from the secretary of state deliver to the secretary of state, the bound volumes of the acts; "and within thirty-five days thereafter must deliver to such officer" (Code, § 1671) the bound volumes of the journals—referring to these provisions of the law and its contract, respondent is firmly of opinion that it was in the contemplation of the Legislature and its contract with the Board of Control and Economy that the public printer (so to refer to the contractor for the public printing) who had the contract for the fiscal year in which the Legislature met should print the acts and journals of that session. Due consideration of the contract and its related law has led us to a different conclusion.

Section 1671 of the Code of 1907, in substantially its present shape, providing for the delivery of both acts and journals of the Legislature, dates from the Code of 1852. Section 83. Provisions for the printing of the general laws in pamphlet form immediately after their approval and delivery to the secretary of state—that is, within three days—was made for the first time in 1915. Acts 1915, supra. No such provision for the printing of the journals is made. From the act relating exclusively to the immediate printing of the acts (as to which there is no pending question), no argument can be drawn with reference to the printing of the journals. That matter is left to be determined without reference to the act of 1915.

[1, 2] When a bill has passed both houses of the Legislature, authenticated by the signatures of the President of the Senate and the Speaker of the House, and approved by the Governor, it becomes an act of the Legislature and its text is exempt from change by any authority whatsoever, but the journals are subject to correction; each House has the power to correct its journals so as to make them speak the truth at any time before final adjournment. West End v. Simmons, 165 Ala. 359, 51 South. 638; Commissioners v. Farmers Bank (N. C.) 21 Ann. Cas. 812, note. Section 928 of the Code of 1907 (amended, Acts 1919, p. 458), which appeared first in the Code of 1896 (section 2240), relates to the journals only. It requires that—

"Within thirty days after the adjournment of any session of the Legislature, the secretary of the senate and the clerk of the House of Representatives must file and arrange the papers of their respective houses in the office of the secretary of state, and copy and deliver to the public printer the journals of their respective houses, with proper indexes thereto."

This means the papers and the journals of the entire session, and, obviously, this duty in respect of them can be performed only after final adjournment. In Montgomery Beer Bottling Works v. Gaston, 126 Ala. 446, 28 South. 497, 51 L. R. A. 396, 85 Am. St. Rep. 42, decided in 1899, this court—not to quote at too great length—held that the Constitution and statutes of this state as plainly imply, as if they contained the express language, that the journals of the two houses required by law to be kept shall be in permanent, substantial book form, thereby promoting their accessibility and the better securing their permanent preservation, and it was said that—

"No other form of preserving the original legislative history of the state would subserve the constitutional and legislative requirements."

As stated above, respondent filed in the office of the secretary of state a copy of the journal in question on October 27, 1923. This filing was some 20 and odd days after the beginning of the term of petitioner's contract, whether estimated from the 1st or the 3d of October, and must be accepted as having been done immediately after the adjournment of the Legislature, for, in our judgment, section 928 of the Code constitutes a competent legislative definition of the phrase "immediately after adjournment" as employed in section 55 of the Constitution. The word "immediately" may, and we know as matter of fact often does, mean "quickly"; "without unnecessary delay" (Webster's Internat. Dict.), and, we doubt not, bears that meaning in section 55. It is to the permanent record, prepared in substantial book form, that the courts must look for the legislative history of laws enacted, for "common and judicial knowledge alike assure us that such has been the manner of making up and keeping these journals during the history of the state." Montgomery Beer Bottling Works v. Gaston, supra.

[3, 4] They may not look elsewhere, for, while a journal is printed and published for the convenience and information of the public, yet where there is a discrepancy, the record in the office of the secretary of state must govern. Ex parte Howard-Harrison Co., 119 Ala. 484, 24 South. 516, 72 Am. St. Rep. 928; State ex rel. McKinley v. Martin, 160 Ala. 181, 48 South. 846; State ex rel. Crenshaw v. Joseph, 175 Ala. 579, 57 South. 942, Ann. Cas. 1914D, 248. So it seems clear that the journal to be printed for public convenience and information must be identical with the permanent record, not a "batch of papers," which must be filed in the office of the secretary of state within 30 days after the final adjournment of the Legislature, and there kept. Customarily some time after adjournment is consumed in preparing or completing

the journal in its permanent form (and the Legislature makes provision for that service to be performed after its adjournment) after which it is authenticated by the signatures—to limit our observations to the necessities of the present case—of the speaker and clerk and the permanent copy lodged with the secretary of state. This customary and reasonable, if not absolutely necessary, method of doing the thing in question is, by implication, recognized in Montgomery Beer Bottling Works v. Gaston, supra, and in State ex rel. Brickman v. Wilson, 123 Ala. 278, 26 South. 482, 45 L. R. A. 772, and, as we think, is contemplated by the provisions of section 928 of the Code. The contracts under which the respective claimants of the right to do this printing—so to refer to the Brown and Wilson Companies—claim, it must be held, were made with a view to this custom which is recognized in the statute and previous decisions of this court. We assume that the clerk of the House exercised due diligence—in fact, he seems to have been unusually diligent—in preparing the journal of the House; and yet he delivered the printer's copy to the Brown Company after the term of its contract had expired and after formal notice (if that be important) that the Wilson Company claimed the right to print under its contract. We cannot conceive that the law or the contracts in question contemplated that different parts of the session's journal (or journals, if that form of words be preferred) should be delivered to different printers. The requirements of the law as to binding in one volume (Code, § 1669, as amended Acts 1919, p. 183) would exclude that conclusion. If then, to illustrate, the session of the Legislature had been extended beyond October 1 or 3, 1923, as, agreeably with legislative practice, might well have been the case, there can be no doubt that the Wilson Company would have been entitled to print the journal of the entire session. It is of no consequence that such a journal would have contained a narrative of past transactions, a history of legislative proceedings had during the life of the Brown Company's contract. Now it transpires that in the exercise of unusual diligence the printer's copy could only be got ready for delivery during the term of the Wilson Company's contract, and we cannot avoid the conclusion that the Wilson Company was entitled to have it.

[5, 6] Respondent argues that—

"The construction of a statute by those charged with its execution, particularly high executive officials, is entitled to great consideration."

Such is the rule in the case of statutes of doubtful meaning where such construction has for many years controlled the conduct of the public business. United States v. Healey, 160 U. S. 136, 141, 16 Sup. Ct. 247, 40 L. Ed. 369. But there has been no such construction in the peculiar circumstances of this case, and what construction has been placed upon section 928 by the court points, as we think has sufficiently appeared, rather decidedly away from respondent's contention. The immediate, direct object of this proceeding is to compel the performance of a public duty, a duty imposed by law. Necessarily involved is the interpretation of the contracts under which the printing companies are claiming, and as to their meaning, both public documents, the parties are not agreed. These contracts, properly interpreted, the decisions of this court construing related provisions of the statutory law, and legislative practice, all contribute to the proper solution of the question whether an officer of the state shall be required properly to perform a duty imposed upon him by law. If the question were whether the contract should be awarded to one printer or another, it may be that an irrevisable discretion would be involved—though as to that there is no need for decision at this time—but in the case now presented the contract has been awarded; the rights of all parties have been definitely fixed; it remains only for respondent to perform his definitely ascertained duty in the premises.

Another suggestion is that respondent as clerk of the House was obliged to examine all the facts of the contentions presented to him by the rival claims of the printing companies, form his judgment before he delivered the printer's copy to either, and that, having done so, his judgment, his discretion in the premises, cannot be controlled by the writ of mandamus. In Grider v. Talley, 77 Ala. 425, 54 Am. Rep. 65, it was pointed out that the necessity for the ascertainment of the state of facts on which the performance of the act depends exists in every case of a ministerial duty, and that such necessity does not operate to convert it into an act judicial in its nature. State ex rel. Turner v. Bradley, 134 Ala. 549, 33 South. 339; Ex parte State, 89 Ala. 177, 8 South. 74. The act required of the respondent is a ministerial act, not involving judicial discretion, and its performance will be enforced by the writ of mandamus. State ex rel. Turner v. Henderson, 199 Ala. 244, 74 South. 344; Ex parte Pickett, 24 Ala. 91, and cases cited last above. In a case substantially on all fours with this it has been decided that mandamus will lie to require the secretary of state to furnish a copy of the laws to a relator who had a contract for printing the same—this notwithstanding another contract for the same printing had been entered into with another printer claiming the same right. State ex rel. Speer v. Barker, 4 Kan. 379, 96 Am. Dec. 175.

[7] Relator must have a clear legal right. The facts are undisputed. A doubt that may arise in the mind of the court in matter

of law as to the existence of the duty will not require or justify the denial of the writ.

"It is the court's province and duty to solve all such doubts and declare the duty as it finds it to be after its misgivings as to intent and meaning of the statute involved or as to any other question of law have been eliminated. * * * Of course, the doubts of the officer as to his duty are of no consequence." State ex rel. Brickman v. Wilson, supra.

[8] Mandamus will not issue when it would work injustice or operate harshly. As applied to the present case this means only that respondent, acting on the advice of the Board of Control and Economy, now the State Board of Administration—as he alleges he did—delivered the printer's copy to a printer not entitled to receive it and would now find it hard to make another copy. But the State Board of Administration had no duty or authority in the premises. Its complete office had been performed when it approved the contract with the Wilson Printing Company. Petitioner's right is clear; that right has been violated; there is no other adequate remedy, no other remedy of any description. No reason appears why the writ should not have issued.

Respondent, appellant, quoted High on Extraordinary Legal Remedies (3d Ed.) § 39, as follows:

"Courts refuse in such a case to interfere when it is apparent that the interests of third parties, not before the court, are involved, even though the officer should express his willingness to perform the duty required."

But the quoted text is written immediately following this statement of the law:

"Since mandamus lies only to compel the performance of duties clearly prescribed by law, it will not be granted when there is any substantial defect in the proof of the relator's right."

In the present case there is no defect in the proof of relator's right; the facts, as we have said, are undisputed. Respondent, in this connection, lays stress on Ex parte Du Bose, 54 Ala. 278. In that case the petitioner, claiming the benefit of an act of the Legislature passed subsequent to a judgment against him in an action of ejectment in virtue of which his adversary had been put in possession, sought to compel the circuit judge to approve a supersedeas. This court denied the writ on consideration that the act did not intend to undo what had been lawfully done in the execution of a judgment of the trial court, that to permit such operation of the act would involve injustice to respondent by the disruption of important rights which had accrued to him under the judgment in ejectment. But in Roach v. State ex rel. Albritton, 148 Ala. 419, 39 South. 685, in which, evidently, Ex parte Du Bose was cited as authority to the contrary, the court upheld the writ commanding the judge of probate to make a deed of land to the purchaser at tax sale notwithstanding the judge, on the application of a third party, not before the court, had heard evidence and had determined that such third party had a right to redeem as owner and had issued to him a certificate of redemption, but this after the lapse of more than two years. And it was held that Cooper, the third party, was not a necessary party to the proceeding. Those were cases involving questions of private right only. In High on Extraordinary Legal Remedies, § 431, it is said, with citation of numerous cases, that—

"When the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the people are regarded as the real party in interest, and the relator at whose instigation the proceedings are instituted need not show that he has any legal or special interest in the result, it being sufficient to show that he is a citizen and as such interested in the execution of the laws."

As a corollary, it would seem, the public officer against whom the writ is sought for the performance of a public duty must be regarded as the real party defendant. Here the two rights are combined, and it would be a singular state of things if petitioner, having a clear right dependent upon the performance of a public duty by respondent, but unable to sue the state because the state cannot be sued, should be denied all relief because he cannot bring in a party with whom he has no privity and whom, for that reason, he cannot sue.

In conclusion it is urged that public interests will be injuriously affected by the issue of the writ in this case. The permanent records of the proceedings of the Legislature have been lodged with the secretary of state, where they are open to the inspection of any one having an interest to be served. The only substantial interest of the public now is that the law as to printing be observed. Respondent may have involved himself and the Brown Printing Company in some embarrassment by delivering to it parts of the journal at a time when it was impossible to know whether the Brown Company or some one else would be entitled to print—this, because a new contract was due to be made October 1st and it was impossible to know when the Legislature would adjourn finally and, for that reason, to know to whom the completed journal should be delivered. But they took a chance as to this and cannot be heard to complain of the consequences of their own mistake.

It may have been observed that at various points the argument as to the several contentions has overlapped. So have the points taken against the judgment of the trial court, and our effort has been to consider

them all. Our best judgment is that the ruling of the trial court was correct and should be affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.