**CARNLEY, Judge of Probate, v. BRUNSON.**

**4 Div. 693.**

Supreme Court of Alabama.

June 5, 1933.

Rehearing Denied June 29, 1933.

J. A. Carnley, of Elba, pro se.

C. L. Rowe, of Elba, for appellee.

THOMAS, Justice.

The judgment on the petition, after coming in of the amended answer, was for petitioner.

The rules touching the constitutionality of a statute are established in this jurisdiction, and the decisions are collected in Jefferson County v. Busby (Ala. App.) 148 So. 415;[2] State ex rel. Austin v. Black, 224 Ala. 200, 130 So. 431; Ex parte Bowdoin (Ala. App.) 141 So. 911;[1] Ex parte Parks, 225 Ala. 8, 141 So. 914.

The issues as to the sufficiency of the notice, under section 106 of the Constitution, accompanying each bill on its introduction in the House as No. 279 and in the Senate as No. 171, were sustained. We are not disposed to recede from the announcement that such notice contained the *substance* of the proposed act. First National Bank of Eutaw v. Smith, 217 Ala. 482, 117 So. 38; State ex rel. Wilkinson v. Allen, 219 Ala. 590, 123 So. 36.

The decisions as to what constitutes the journals of the Legislature as filed in the office of the Secretary of State are likewise positive and long established. Montgomery Beer Bottling Works v. Gaston, Judge of Probate, etc., 126 Ala. 425, 28 So. 497, 51 L. R. A. 396, 85 Am. St. Rep. 42; State ex rel. Brickman v. Wilson, 123 Ala. 259, 26 So. 482, 45 L. R. A. 772; Penton v. Brown-Crummer Inv. Co., 222 Ala. 155, 131 So. 14, and authorities; Ex parte Kelly, 153 Ala. 668, 45 So. 290; State ex rel. Frederick v. Brodie, 148 Ala. 381, 41 So. 180.

The journals so filed in the office of the Secretary of State and as published show that Senate Bill No. 171 was delivered to the Governor on March 7, 1931, but fail to show that the same was vetoed by the Governor and returned to the Senate within two days after the reassembling of the Legislature on March 31, 1931. Section 125, Constitution; House Joint Resolution 61, vol. 1, House Journal, p. 623; Senate Journal, vol. 1, pp. 479, 483, 651, 649; House Journal, vol. 1, pp. 608, 612, 635, 695, 727, 752. We take judicial knowledge that Senate Bill No. 171 was not filed in the office of the Secretary of State as a bill enacted into law; take judicial knowledge of the proclamations and messages of the Governor; we take judicial

---

knowledge of the laws. State ex rel. Crenshaw v. Joseph, 175 Ala. 579, 593, 57 So. 942, Ann. Cas. 1914D, 248; Woessner, Sheriff v. Bullock, 176 Ind. 166, 93 N. E. 1057; Greene v. Boaz, 157 Ala. 68, 47 So. 255; Jordan v. McDonnell, 151 Ala. 279, 44 So. 101; Mobile, Jackson & Kansas City R. R. Co. v. Bromberg, Adm'r, etc., 141 Ala. 258, 37 So. 395; Kansas City, Memphis & Birmingham Railroad Co. v. Flippo, 138 Ala. 487, 35 So. 457; Jemison v. Town of Fort Deposit, 21 Ala. App. 331, 108 So. 396. See, also, Hodge v. Joy, 207 Ala. 198, 201, 92 So. 171; State ex rel. Rabb v. Holmes, 196 Ind. 157, 147 N. E. 622; 15 R. C. L. p. 1066, § 9, and note; 23 C. J. p. 128, § 1947.

We have refreshed judicial knowledge as to the Governor's message, and it was of date of March 31, 1931, to the Senate and of the veto of Senate Bill No. 171, and was within the provisions of section 125 of the Constitution.

■ The failure to insert that veto message in the journal did not render it nugatory in that he acted in an executive capacity in a legislative matter. Any other construction would subordinate that prerogative executive action of the Governor to the discharge or failure thereof, of the clerk of the Senate or the House. Though the records of the Secretary of State fail to disclose such bill and its veto, those of the clerk of the Senate disclose such bill and its veto and return to the Senate on March 31, 1931.

■ When the bill with the Governor's veto was returned by him to the House, in which it originated, and no further action was taken thereon, it failed to become a law (section 125, Constitution; Jones v. McDade, 200 Ala. 230, 232, 75 So. 988; Stewart, Clerk of House, etc., v. Wilson Printing Co., 210 Ala. 624, 99 So. 92; Tayloe v. Davis, 212 Ala. 282, 102 So. 433, 40 A. L. R. 1052); and this, no doubt, accounts for the failure of the records in the office of the Secretary of State to disclose that such Senate Bill was or was not passed.

■ We have examined the notices attached to Senate Bill No. 171, introduced February 17, 1931, and House Bill No. 279 of the same date, and find the same of like effect and to be a sufficient statement of the substance of the proposed act, in due compliance with section 106 of the Constitution. First National Bank of Eutaw v. Smith, 217 Ala. 482, 485, 117 So. 38.

■ The notice being the same on both bills, did the failure of the Senate Bill exhaust the notice as given of the House Bill? We are of opinion that when given it was a compliance with constitutional authority and requirement as to the introduction of a local bill, and did not become functus officio on the failure of the Senate Bill with like notice. This is the effect of the holding on this question contained in Hudgens v. State, 15 Ala. App. 156, 159, 72 So. 605, and Ex parte Bowdoin (Ala. App.) 141 So. 911, 913; Ex parte Parks, 225 Ala. 8, 141 So. 914.

We do not find that the provisions contained in section 4 of the act were a departure from the published notice, or from the title; nor were they offensive to section 45 of the Constitution. Local Acts 1931, p. 183. As to notice required of the substance of a bill, see Roper v. State ex rel. Day, 210 Ala. 440, 441, 98 So. 286; Ex parte State ex rel. Letford, 200 Ala. 162, 75 So. 910; State ex rel. Van Deusen v. Williams, 143 Ala. 501, 39 So. 276; Christian v. State, 171 Ala. 52, 53, 54 So. 1001; Larkin v. Simmons, 155 Ala. 273, 46 So. 451.

We are of opinion that the order of the circuit court was free from error, and it is therefore affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER, FOSTER, and KNIGHT, JJ., concur.

BOULDIN, J., dissents on authority of Commissioners' Court of Winston County v. State ex rel. County Highway Com., 224 Ala. 247, 139 So. 356, and cases there cited.

BROWN, J., dissents.

BROWN, Justice (dissenting).

In my judgment there was a failure of compliance with section 106 of the Constitution in the passage of the act creating the "Inferior Court of Coffee County." Local Acts 1931, pp. 182–192.

The notice, which is in the language following, was wholly insufficient to advise the public affected of the substance of the proposed law: "Notice is hereby given that a bill will be introduced at the present session of the Legislature of the State of Alabama to establish in and for Coffee County, Alabama, a court to be called the Inferior Court of Coffee County; to prescribe the powers and jurisdiction of said court, to provide for its officers, their powers, duties and compensation, and time of holding said court; to prescribe the rules of procedure in said court; to provide for the transfer of all misdemeanors now on the Circuit Court Docket in said County to the said court, and for the transfer to the said court of all misdemeanor cases which may hereafter be returned by indictment into the Circuit Court; and to provide for the transfer by agreement of parties of all civil suits now pending on said Circuit Court Docket where the amount involved does not exceed the jurisdiction of said court; and to provide terms and sessions thereof to be held in both Enterprise Division and Elba Division of the said County."

There is nothing in this notice to indicate the nature and extent of the court's jurisdic-

tion, what offices are to be created, what salary or compensation the officers shall receive, and how the same shall be paid, whether by the state or the county, or the litigants. Nor does it indicate how the officers of said court shall be chosen, whether by the people, the Governor, or some other authority. It does not show whether trials in said court shall be by the judge without a jury or by jury.

The act consists of twenty-five sections, covering nine pages of the printed act, and contains approximately four thousand words, while the notice contains one hundred and seventy-three words, and the title itself contains two hundred and thirty-three words.

There is more information in the title of the act as to its substance than in the notice, and the only way any one interested in or opposed to its passage could get a fair idea of its scope and effect would be to obtain a copy, or inspect the original bill. The Constitution contemplates that the notice must inform the people interested in the legislation of the "substance" of the bill, and not that they shall have to resort to other sources for information. Commissioner's Court of Winston County v. State ex rel. County Highway Commission, 224 Ala. 247, 139 So. 356.

The authorities generally are agreed that the notice of the proposed law need not state details, and if the *substance of the proposed law* is given, the Legislature is left to work out the details, and amendments relating thereto are permissible, *but there can be no material departure from the substance of the proposed law as stated in the notice*, and if there is such departure the enactment is void. Commissioners' Court of Winston County v. State ex rel. County Highway Commission, supra; State ex rel. Wilkinson v. Allen, 219 Ala. 590, 123 So. 36; First Nat. Bank of Eutaw v. Smith, 217 Ala. 482, 117 So. 38.

Yet, to hold that the notice may be so general and indefinite as to give no more information than is contained in the title, or less, as in the instant case, defeats the purpose of the Constitution. Who will deny that the matter of salaries to be paid the officers of the court is not a matter of substance? So, with the jurisdiction of the court and its extent—matters relating to the necessity of such legislation and the burden to be imposed on the taxpayer.

The facts in this case illustrate the proposition. The bill as introduced in the Senate as Senate Bill No. 171, and the bill as introduced in the House as House Bill 279, proposed to create an "Inferior Court Fund" arising from fines and forfeitures in said court, and out of this and the fees allowed by law, "and no other" all of the officers of the court were to be paid. The bill as introduced and passed in the Senate, provided that one half of the salary of the judge should be paid from such fund and the other half out of the general funds of the county. The bill as amended and passed in the House provided that the entire salary of the judge should be paid out of the general fund.

If the notice had stated the substance of these bills as introduced, that is, that the officers should be paid out of the special fund created by the act "and no other," no one would deny that the bills as passed departed in material substance from the notice, and were in violation of the Constitution. Is it logical, therefore, because the notice gives no information other than an act to create a court to be known as the "Inferior Court of Coffee County," to say such notice is sufficient?

Unless this court proposes to establish one construction of the Constitution in respect to acts creating courts, and another for all other acts, the act involved here should be condemned, in obedience to the mandate of section 106 of the Constitution that "the courts shall pronounce void every special, private, or local law which the journals do not affirmatively show was passed in accordance with the provisions of this section."

I am further of opinion that the notice became functus officio when Senate Bill No. 171, introduced thereunder, passed through the legislative mill, and came to its death by the failure of the Legislature to pass it over the veto of the Governor.

It is familiar legislative practice, of which the court takes judicial notice, to introduce the same bill in each House on the same day, for the sole purpose of meeting the requirements of sections 62 and 63 of the Constitution, the first of which provides that "no bill shall become a law until it shall have been referred to a standing committee of each house, acted upon by such committee in session, and returned therefrom, which facts shall affirmatively appear upon the journal of each house," and the other, that "every bill shall be read on three different days in each house," etc. This practice does not contemplate that both of said bills shall be passed through both Houses and become laws, thus producing duplication in statutes, but the common and approved practice is that the bill, of the House or the Senate, which passes the body in which it was offered and is reported to and delivered to the other, that the other body refers the bill to an appropriate committee who reports it for action by that body, and the customary practice is to report it as passed or substitute one of such bills for the other, and put it on its final passage. The sole purpose of this legislative practice is to save time in putting *that bill* through the legislative mill, either to its successful enactment or its defeat. When this end was reached, the people affected, with the knowledge of this legislative practice and in the light of the notice that *"a bill"* would be introduced, had the right to rest on

the result of this legislative judgment, and assume that nothing further would be done in respect to such legislation without further notice, published as required by the Constitution. See "Response of the Supreme Court" in Hudgens v. State, 15 Ala. App. 157, 72 So. 605, 606.

To hold that this notice, published for the information of the public to be affected, retained its vitality until some bill was successfully passed, is to convert the provisions of the Constitution into a trap through which the unwary public may be lulled into inactivity, and defeat the very purpose of said section 106 of the Constitution.

In the light of this legislative practice, when the House of Representatives accepted and passed Senate Bill No. 171, it must be held to have abandoned House Bill No. 279.

The integrity of section 106 of the Constitution, by its very language, was committed by the Constitution makers who proposed it, and the people who adopted it, to the keeping of "the Courts," and the approval by the majority opinion of the legislative practice followed in respect to the enactment of the local law involved, opens the gates to the "Trojan Horse" with its cargo of destruction, through which, what was intended as safeguards is converted into a trap to mislead and ensnare.

I therefore respectfully dissent.

BOULDIN. J., concurs in the foregoing dissenting opinion in so far as it relates to the sufficiency of the notice.